Leib M. Lerner (CA State Bar No. 227323)
Anthony L. Greene (CA State Bar No. 302044)
Alina A. Ananian (CA State Bar No. 322905)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: leib.lerner@alston.com
Email: anthony.greene@alston.com
Email: alina.ananian@alston.com

Proposed Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>XTAL Inc.,<br><br>Debtor | Bankruptcy Case No.: 18-52770<br><br>Chapter 11<br><br>**DEBTOR'S MOTION FOR ENTRY OF ORDER EXTENDING THE AUTOMATIC STAY TO PENDING ARBITRATION AGAINST DEBTOR EMPLOYEES**<br><br>**Hearing**<br>**Date: January 24, 2019**<br>**Time: 10:30 a.m.**<br>**Place: Courtroom 3020**<br>**280 S 1st Street**<br>**San Jose, CA 95113** |

# TABLE OF CONTENTS

|   |   |   | Page(s) |
|---|---|---|---|

I. GENERAL BACKGROUND ................................................................................................1

    A. The Arbitration Targets the Debtor's Key Employees as a Proxy for a Direct Attack on the Debtor ...........................................................................................................2

        i. Hua-yu Liu, General Manager, Chief Product Officer of the Computational Solution Division ................................................................................2

        ii. Song Lan, VP of Engineering, Computational Solution Division ....................2

        iii. The Debtor is the Actual Target of the Prepetition Arbitration Action ............4

    B. Continuation of the Arbitration Will Prejudice the Debtor and Severely Hinder its Ability to Reorganize ....................................................................................................6

II. ARGUMENT .......................................................................................................................7

    A. The Court Should Exercise its Broad Equitable Powers to Extend the Automatic Stay to the Non-Debtor Parties ...........................................................................................7

    B. The Court Should Exercise its Broad Equitable Powers to Extend the Automatic Stay to the Non-Debtor Parties .........................................................................................10

III. CONCLUSION ..................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*,
   788 F.2d 994 (4th Cir. 1986) ...................................................................................8, 9

*Capitol Records, Inc. v. MP3tunes, LLC*,
   2012 U.S. Dist. LEXIS 87718 (S.D.N.Y. June 25, 2012) ..............................................9

*Gucci, Am., Inc. v. Duty Free Apparel, Ltd.*,
   328 F. Supp. 2d 439 (S.D.N.Y. 2004) .....................................................................9, 10

*In re Calpine Corp.*,
   Nos. 05-60200 (BRL), 06-1757 (BRL), 2007 Bankr. LEXIS 2025 (Bankr.
   S.D.N.Y. Apr. 30, 2007) ...............................................................................................10

*In re Congregation Birchos Yosef*,
   535 B.R. 629 (Bankr. S.D.N.Y. 2015) ............................................................................9

*In re the Great Atl. & Pac. Co., Inc.*,
   Case No. 10-24549 (Bankr. S.D.N.Y. Dec. 23, 2011) ..................................................10

*In re McCormick*,
   381 B.R. 594 (Bankr. S.D.N.Y. 2008) .....................................................................9, 10

*Lisa Ng v. Adler (In re Adler)*,
   494 B.R. 43 (Bankr. E.D.N.Y. 2013) .............................................................................9

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
   474 U.S. 494 ...................................................................................................................8

*N. Star Contracting Corp. v. McSpedon (In re N. Star Contracting Corp.)*,
   125 B.R. 368 (S.D.N.Y. 1991) .....................................................................................10

*Queenie, Ltd. v. Nygard Int'l*,
   321 F.3d 282 (2d Cir. 2003) ...........................................................................................9

*Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Enobrac Plumbing, Inc.*,
   No. 17-CV-2846-DLI-SJB, 2018 U.S. Dist. LEXIS 23658 (E.D.N.Y. Feb. 12,
   2018) ...............................................................................................................................9

**FEDERAL STATUTES**

11 U.S.C. § 105(a) ...................................................................................................................1

11 U.S.C. § 362 ...........................................................................................................1, 6, 11

Bankruptcy Code § 105(a) ......................................................................................................8

Bankruptcy Code § 362 ..................................................................................................7, 9, 10, 11

**OTHER AUTHORITIES**

H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) ......................................................................8

H. Rep. No. 95-595, 95th Cong., 1st Sess. 342-43 (1977) ...............................................................9

H. Rep. No. 595, 95th Cong., 1st Sess. 341-42 (1977)....................................................................9

S. Rep. No. 95-989, 95th Cong., 2d Sess. 51-52 (1978).................................................................9

S. Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787.........................................................................................................................................8

S. Rep. No. 989, 95th Cong., 2d Sess. 51 (1978) ...........................................................................9

XTAL Inc., the above-captioned debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), pursuant to 11 U.S.C. §§ 105(a) and 362(a), by and through its undersigned attorney, hereby files this *Motion for Entry of Order Extending the Automatic Stay to Pending Arbitration Against Debtor Employees* (the "**Motion**").

## I. GENERAL BACKGROUND

1. The Debtor filed a voluntary Chapter 11 case in the United States Bankruptcy Court for the Northern District of California on December 17, 2018 (the "**Petition Date**"). The case was assigned to the Honorable M. Elaine Hammond, and bears case number 18-52770 (the "**Bankruptcy Case**"). No trustee has been appointed, and the Debtor remains a debtor-in-possession.

2. The Debtor specializes in yield enhancement and optimization software with hardware acceleration targeting the semiconductor ecosystem. The Debtor's principal office is located in San Jose, California. As of the filing of the Debtor's bankruptcy petition, the Debtor had 28 regular, full time employees. As a result of pending litigation brought by ASML US, Inc. ("**ASML**") against the Debtor in Superior Court of Santa Clara, Case No. 16-cv-295051 ("**Superior Court Case**") and the concomitant stress on its operations, the Debtor elected to seek protection in Chapter 11. *See* the Declaration of Jiangwei Li, filed concurrently herewith (the "**Li Declaration**"), ¶ 3. A true and correct copy of the complaint in the Superior Court Case (the "**Complaint**") is attached as **Exhibit 1** to the Li Declaration.[1] The filing, by staying the current litigation against the Debtor, will allow the Debtor time to pursue a prompt and efficient reorganization in which it will reduce expenses, streamline its workforce, reject burdensome executory contracts, restructure its obligations to creditors, and recapitalize. Li Declaration, ¶ 3.

3. Two of the Debtor's critical Employees, Hua-Yu Liu ("**Liu**") and Song Lan ("**Lan**" and, together with Liu, the "**Key Employees**") are respondents in an arbitration proceeding before the American Arbitration Association styled *ASML US, Inc. v. Hua-yu Liu and Song Lan,* AAA Ref. No. 01-16-0001-7373 (Arbitrator William A. Quinby) (the "**Arbitration**"). Li Declaration, ¶ 4; *see also*

---

[1] A fourth amended complaint was filed on November 15, 2018 by ASML in the Superior Court Case (the "**Fourth Amended Complaint**"). A true and correct copy of the Fourth Amended Complaint is attached the Li Declaration as **Exhibit 2**.

1

Declaration of Hua-Yu Liu ("**Liu Declaration**"), filed concurrently herewith. A true and correct copy of the Arbitration demand is attached to the Liu Declaration as **Exhibit 4** (the "**Arbitration Demand**").

4. The Arbitration is a thinly-veiled attack on the Debtor, brought against two of the Debtor's most important employees, by the same party that continues to aggressively pursue the Debtor in the State Court Case. Indeed, both the Superior Court Case and the Arbitration were filed on the same day, May 11, 2016, pursued by the same attorneys for ASML, and based upon the same set of facts and documents.

### A. The Arbitration Targets the Debtor's Key Employees as a Proxy for a Direct Attack on the Debtor

5. As discussed above, the Arbitration to which the Debtor seeks to extend the stay through this Motion is to stop the Arbitration against the Key Employees, who are essential to the Debtor's operations and rehabilitation efforts.

*i. Hua-yu Liu, General Manager, Chief Product Officer of the Computational Solution Division*

6. Liu is the Debtor's Chief Product Officer of its Computational Solution Division, a high level position with the Debtor. Liu Declaration at ¶ 1. Liu has been recognized as a leader in her field, and has made significant contributions to product development, product strategy, and customer collaboration. Liu spent fourteen years at Hewlett Packard before eventually moving to Brion Technologies, Inc. ("**Brion**"). Liu Declaration at ¶ 5. Liu's position when she left Brion was Vice President of Product Engineering and Marketing. *Id*. at ¶ 6.

*ii. Song Lan, VP of Engineering, Computational Solution Division*

7. Lan is the Debtor's current VP of Engineering of its Computational Solution Division, also a high level position with the Debtor. Lan Declaration at ¶ 1. His position when he left Brion was Director of Engineering. Lan Declaration at ¶ 5.

8. In the Arbitration Demand, ASML alleges that Liu and Lan used Brion's resources, information and systems to perform unauthorized work for the Debtor which benefitted the Debtor's capabilities. In fact, the gravamen of the demand filed by ASML is that ASML was unfairly harmed by certain work that was allegedly performed by Liu and Lan for the Debtor. These are substantially

the same allegations that ASML asserts in the Superior Court Case against the Debtor. Specifically, the Arbitration Demand alleges:

> 6. Respondents both departed from ASML's Brion division on or about August, 2015 to work for a competitor company called Xtal, Inc. ("Xtal"). On information and belief, Xtal was founded in 2014 at least in part by two former Brion employees, Zongqiang Yu and Jiangwei Li, with the financial backing of a consortium of wealthy private investors. ASML is informed and believes, and therefore alleges, that while it had been led to believe that Xtal's business did not include computational lithography, Xtal's current business in fact encompasses computational lithography and capitalizes on Brion's innovations in the field. For example, in the past two years alone Xtal has hired away at least five ASML employees who have had direct responsibilities for Brion's computational lithography business. ASML is informed and believes, and therefore alleges, that Xtal intends to build its new computational lithography business on the back of Brian's valuable and proprietary information.
>
> 7. ASML is informed and believes, and therefore alleges, that Respondents, while both were still employed by ASML in its Brion division, acted in concert performing work for Xtal in violation of their contractual and legal duties to ASML. ASML did not know that Respondents were secretly working for Brion's competitor, Xtal. While they continued to draw a paycheck from ASML and enjoyed all of the other benefits of being full-time ASML employees in the Brion division, Respondents are believed to have used Brion's resources, information, software, algorithms, and systems to perform unauthorized work for Xtal, which benefited Xtal's product capabilities. ASML did not consent, and would not have consented, to Respondent's unauthorized and disloyal "moonlighting" for Xtal. This arbitration demand seeks recourse for Respondents' wrongdoing.

*See* Arbitration Demand, **Exhibit 4** to the Liu Declaration, at ¶¶ 6 & 7.

9. Similarly, the Complaint in turn alleges:

> 5. On information and belief, Xtal was founded in 2014 at least in part by two former Brion employees, Zongqiang Yu and Jiangwei Li, with the financial backing of a consortium of wealthy private investors. ASML is informed and believes, and therefore alleges, that while it had been led to believe that Xtal's business did not include computational lithography, the reality is that Xtal's current business not only encompasses computational lithography, but it unlawfully capitalizes on Brion's innovations in the field.
>
> 6. On or about August 2015, at least two high-level ASML employees working on the company's Brion division computational lithography business—Hua-yu Liu, who was hired by Brion in 2004 and served as one of Brion's most senior executives as the Vice President of Product Engineering and Marketing, and Song Lan, who was hired in 2005 as a Senior Engineer and was later promoted to Director of Engineering in Brion's lithography model team—left ASML's Brion division to

3
DEBTOR'S MOTION FOR ENTRY OF ORDER EXTENDING THE AUTOMATIC STAY

work for Xtal. ASML is informed and believes, and therefore alleges, that, without ASML's knowledge or consent, Xtal intentionally directed and encouraged Hua-yu Liu and Song Lan to perform work for Xtal while they were still employed by ASML, before their departure from ASML on or about August 2015. ASML is informed and believes that Xtal committed these wrongful acts with knowledge of Hua-yu Liu and Song Lang's contractual, professional, and fiduciary duties to ASML. In their capacities as ASML employees in the Brion operating division and in consideration of their receipt of salary and benefits from ASML, both Hua-yu Liu and Song Lan were trusted with access to Brion's secret, confidential information and know-how, and they both made fiduciary and contractual commitments to maintain that information "in strictest confidence." In addition, both Hua-yu Liu and Song Lan agreed to work exclusively for Brion during the terms of their employment and to refrain from engaging in any activities that conflicted with their professional and fiduciary duties to Brion. Nevertheless, ASML is informed and believes that, at a time when Xtal knew that Hua-ya Liu and Song Lan were still employed by ASML in its Brion division, Xtal encouraged them to agree to work in secret for Xtal, using Brion's resources, information, software, algorithms, and systems to perform unauthorized work for Xtal, for the benefit of Xtal's product capabilities. ASML is informed and believes, and therefore alleges, that Hua-ya Liu and Song Lan responded to Xtal's inducements by improperly working for Xtal while they remained ASML employees. ASML is informed and believes, and therefore alleges, that the misconduct by Hua-yu Liu and Song Lan alleged herein all occurred at the specific direction and encouragement of Xtal.

*See* Complaint, **Exhibit 1** to the Li Declaration, ¶¶ 5 & 6.

10. The Key Employees are critical to the Debtor's continued operations and going concern value. Li Declaration, ¶ 6. The Debtor has been paying these Key Employees' legal expenses in defending the Arbitration Action, and indeed the same law firm that defended the Debtor in the Superior Court Case, Putterman Landry + Yu LLP ("**Putterman**") was defending the Key Employees in the Arbitration. Li Declaration, ¶ 7; Liu Declaration, ¶¶ 7 & 8; Lan Declaration, ¶¶ 6 & 7. Immediately before Debtor's bankruptcy filing, Putterman informed both the Debtor and the Key Employees that it was withdrawing from its representation in both the Superior Court Case and the Arbitration. Liu Declaration, ¶ 9; Lan Declaration, ¶ 7.

*iii.  The Debtor is the Actual Target of the Prepetition Arbitration Action*

11. ASML's Arbitration Demand is replete with allegations and assertions inextricably connected to the Debtor. In fact, the causes of action brought therein entirely rely on either (i) work Liu and Lan allegedly performed for the Debtor, or (ii) benefits allegedly received by the Debtor to the detriment of ASML. *See* Liu Declaration, Arbitration Demand, **Exhibit 4**, ¶¶ 6 & 7; 23 & 24; 31

4

DEBTOR'S MOTION FOR ENTRY OF ORDER EXTENDING THE AUTOMATIC STAY
Case: 18-52770    Doc# 22    Filed: 12/27/18    Entered: 12/27/18 15:06:59    Page 8 of 15

& 32; 38 & 39; 45; Fourth Amended Complaint, **Exhibit 2** to the Li Declaration, ¶¶ 68-72; 80 & 81; 97 & 98.  Indeed, the prayer for relief in the Arbitration Demand seeks, among other things, injunctive relief against the Key Employees "**to preserve pendent lite all documents and information in their possession, custody or control relating to this action (including anything relating to the services or work they performed for Xtal while they were employed by ASML or Brion, or any use or disclosure of ASML or Brion information or technology in connection with their services or work for Xtal.**"  **Exhibit 4** Arbitration Demand, Page 10.  In other words, in addition to obtaining a judgment against the Key Employees, ASML seeks to control property of the Debtor through the Arbitration.

12. Moreover, the Debtor and ASML stipulated that all discovery in both matters could be used for the both cases.  The Amended Stipulation and Protective Order signed by the Debtor and ASML on March 20, 2018 in Superior Court Case (the "**Protective Order**") provides, among other things:

> 7. Access to and/or Disclosure of Confidential Materials shall be permitted only to... (h)  any persons or entities who are permitted Access to and/or Disclosure of Confidential Materials pursuant to the Stipulation and Protective Order — Confidential and Highly Confidential Designations in the AAA Arbitration.
>
> 8. Access to and/or Disclosure of Highly Confidential Materials or Source Code shall be permitted only to the following persons or entities... (f) any persons or entities who are permitted Access to and/or Disclosure of Highly Confidential Materials pursuant to the Stipulation and Protective Order — Confidential and Highly Confidential Designations in the AAA Arbitration... (i) Song Lan and Hua-yu Liu, in their capacity as the Respondents in the AAA Arbitration.
>
> 9. Confidential Materials, Highly Confidential Materials, and Source Code shall be used by the persons or entities receiving them only for the purposes of preparing for, conducting, participating in the conduct of, and/or prosecuting and/or defending the Proceeding or the AAA Arbitration, and not for any business or other purpose whatsoever.

A true and correct copy of the Protective Order is attached to the Li Declaration as **Exhibit 3**.[2]

---

[2] Debtor's counsel has not been able to confirm that any order was entered by the Superior Court approving the Protective Order, but is informed and believes that the litigants were conducting themselves pursuant to the Protective Order during the Superior Court Case.

### B. Continuation of the Arbitration Will Prejudice the Debtor and Severely Hinder its Ability to Reorganize

13. If the Arbitration proceeds, the Debtor will either need to use estate resources to defend the Key Employees or, if not, the Key Employees will be left unrepresented with the likely outcome of a judgment that will prejudice the Debtor. Moreover, the continuation of the Arbitration will distract these key Debtor personnel from participation in the Debtor's reorganization efforts. In addition, absent a stay, the Key Employees may refuse to provide valuable services to the Debtor on a go-forward basis. Further, adverse rulings or a judgment in the Arbitration could result in an order or findings that would be adverse to the Debtor in any subsequent adjudication of claims against the Debtor, including in the stayed Superior Court Case.

14. The claims asserted against the Key Employees in the Arbitration are essentially claims against the Debtor, which would be subject to the automatic stay imposed by 11 U.S.C. § 362(a). *See* Li Declaration, ¶ 5. Accordingly, the Debtor requests entry of an order extending the application of the automatic stay to the Arbitration.

15. Extension of the Automatic Stay to the Arbitration would relieve the Debtor's estate of the administrative burdens and costs associated with the Arbitration and afford the Debtor the necessary breathing room intended by the Automatic Stay. Without the relief requested, the Debtor may be forced to participate in the Arbitration to protect its interests and minimize its exposure, depriving the Debtor of one of the fundamental debtor protections provided by the Bankruptcy Code. This is particularly salient here, where the Arbitration is wholly dependent on facts and circumstances involving the Debtor and the Key Employees, and seeks injunctive relief with respect to property of the estate. *See* Li Declaration, ¶ 8.

16. The Arbitration schedule is currently as follows (the "**Arbitration Schedule**");

| Arbitration Event | Date |
|---|---|
| Dispositive Motion Deadline | Jan. 7, 2019 |
| Dispositive Motion Opposition Briefs Deadline | Jan. 14, 2019 |
| Dispositive Motion Reply Briefs Deadline | Jan. 21, 2019 |
| In-Person Evidentiary Hearing on Dispositive Motions | Jan. 28, 2019 |
| Deadline for Arbitrator to Rule on Dispositive Motions | Feb. 4, 2019 |

| | |
|---|---|
| Meet and Confer Regarding All Hearing Exhibits and Stipulated Facts | Feb. 11, 2019 |
| Serve Motions *in Limine* | Feb. 18, 2019 |
| Pre-Hearing Briefs, Final Witness Lists w/brief summaries of anticipated testimony exchanged & delivered to Arbitrator; pre-marked exhibits exchanged between parties only | Same |
| Arbitration Hearing (and delivery of exhibits to Arbitrator on opening Hearing Date) | Same |

17. It is Impossible for the Debtor's Key Employees, currently unrepresented by counsel to meet the above-listed deadlines in the Arbitration Schedule, or to respond to any motions filed by ASML. Moreover, because the Debtor has advanced the Key Employee's legal fees, meeting the obligations imposed by the Arbitration Schedule would place an undue financial and logistical burden on the Debtor and its estate.

## II. ARGUMENT

### A. The Court Should Exercise its Broad Equitable Powers to Extend the Automatic Stay to the Non-Debtor Parties

18. Enforcement of the automatic stay is a core aspect of the bankruptcy court's jurisdiction. Section 362(a)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title . . . operates as a stay, applicable to all entities, of –
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

7

DEBTOR'S MOTION FOR ENTRY OF ORDER EXTENDING THE AUTOMATIC STAY

19. The legislative history of section 362 indicates that Congress intended for the scope of the automatic stay to be sweeping, in order to effectuate its protective purpose on behalf of debtors:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> …
>
> The automatic stay is one of the most important protections provided by the Bankruptcy laws. Nevertheless, the Bankruptcy Courts must have the power to enjoin actions not covered by the automatic stay, in order that the bankruptcy case may proceed unembarrassed by multiple litigation.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41, 5973; *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986) (the automatic stay is "one of the most fundamental protections provided [to the debtor] by the bankruptcy laws."). The automatic stay also protects creditors from being harmed by other creditors' efforts to pursue claims against the debtor, or to deprive the debtor of the rights and benefits of the bankruptcy process. *See A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994, 998 (4th Cir. 1986) (the purpose of the automatic stay "is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor").

20. Although the automatic stay directly applies to actions against a debtor, section 105(a) of the Bankruptcy Code confers broad equitable powers on bankruptcy courts to achieve the protections and promote the purposes of chapter 11. Specifically, section 105(a) provides bankruptcy courts with broad authority to enjoin or stay actions that are not directly subject to the automatic stay:

8

DEBTOR'S MOTION FOR ENTRY OF ORDER EXTENDING THE AUTOMATIC STAY

> *The court has ample . . . powers to stay actions not covered by the automatic stay.* Section 105 . . . grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunctive powers of a court of equity.

S. Rep. No. 989, 95th Cong., 2d Sess. 51 (1978); H. Rep. No. 595, 95th Cong., 1st Sess. 341-42 (1977) (emphasis added); *see also* H. Rep. No. 95-595, 95th Cong., 1st Sess. 342-43 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 51-52 (1978) (the effect of an exception to the automatic stay under section 362(b) is not to make the action immune from injunction, and the court has power, under section 105, to stay actions not covered by the Automatic Stay).

21. Courts extend the automatic stay to non-debtors "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003); *Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Enobrac Plumbing, Inc.*, No. 17-CV-2846-DLI-SJB, 2018 U.S. Dist. LEXIS 23658, at *36 (E.D.N.Y. Feb. 12, 2018); *Capitol Records, Inc. v. MP3tunes, LLC*, 2012 U.S. Dist. LEXIS 87718, at *2 (S.D.N.Y. June 25, 2012); *Gucci, Am., Inc. v. Duty Free Apparel, Ltd.*, 328 F. Supp. 2d 439, 442 (S.D.N.Y. 2004). The adverse economic consequence requirement "has been construed to include any perceptible economic harm to a non-party debtor's tangible or intangible property interest." *Lisa Ng v. Adler (In re Adler)*, 494 B.R. 43, 57 (Bankr. E.D.N.Y. 2013), *aff'd*, *Ng v. Adler*, 518 B.R. 228 (E.D.N.Y. 2014). Examples of what courts have found to be claims that would have an immediate adverse economic consequence on a debtor include "claims to establish an obligation of which the debtor is a guarantor..., [and] a claim against the debtor's insurer." *Queenie, Ltd.*, 321 F.3d at 287; *In re McCormick*, 381 B.R. 594, 601 (Bankr. S.D.N.Y. 2008).

22. In addition, courts extend the automatic stay to non-debtor parties where an "there is such identity between the debtor and the third party defendant that the debtor may be said to be the real party defendant and that a judgment against the third party defendant will in effect be a judgment or finding against the debtor." *In re A.H. Robins Co.*, 788 F.2d at 999; *see also Queenie, Ltd.*, 321 F.3d at 288; *In re Congregation Birchos Yosef*, 535 B.R. 629, 633 (Bankr. S.D.N.Y. 2015); *Gucci, Am., Inc.*, 328 F.

Supp. 2d at 441 ("[A] § 362(a) stay may be imposed against a non-bankrupt party when such an identity of interest exists between the debtor and third party non-debtor that a judgment against the third party will directly affect the debtor.").

23. Courts recognize "an identity of interest between a debtor and a third party non-debtor when a right to indemnification exists. These courts reason that a special circumstance exists because a judgment against the non-debtor will affect directly the debtor's assets." *N. Star Contracting Corp. v. McSpedon (In re N. Star Contracting Corp.)*, 125 B.R. 368, 370-71 (S.D.N.Y. 1991); *see also, In re the Great Atl. & Pac. Co., Inc.*, Case No. 10-24549 (Bankr. S.D.N.Y. Dec. 23, 2011) (ECF No. 3085) (extending the automatic stay to various indemnified non-debtor parties named as defendants in personal injury actions, finding that these claims are the "type of claim where [the plaintiff is] really looking to collect against the debtor.").

24. Courts have also referred to the standard for extending the automatic stay in the following way: "where a particular action against the non-debtor party threatens to adversely affect the debtor's reorganization efforts, courts are willing to extend §362(a)'s coverage accordingly." *Gucci, Am., Inc.,* 328 F. Supp. 2d at 441; *In re McCormick*, 381 B.R. at 601; *In re Calpine Corp.*, Nos. 05-60200 (BRL), 06-1757 (BRL), 2007 Bankr. LEXIS 2025, at *5 (Bankr. S.D.N.Y. Apr. 30, 2007).

### B. The Court Should Exercise its Broad Equitable Powers to Extend the Automatic Stay to the Non-Debtor Parties

25. Here, the justifications for extending the automatic stay are applicable. The Key Employees are critical to the Debtor. Prior to the Petition Date, the Debtor agreed to pay their legal fees incurred in connection with the Arbitration, and they would assert indemnity claims against the Debtor with regard to the Arbitration. Consequently the Debtor and the Key Employees have an identity of interest with respect to the Arbitration.

26. If ASML is successful in the Arbitration, it may obtain a judgment that would preclude or impede the Debtor from later asserting various defenses in the Superior Court Case. ASML may also obtain an injunction in the Arbitration against property of the Debtor. For these reasons, the automatic stay should be extended to the Arbitration because entry of a judgment against the Key Employees in that action would, in effect, be a judgment against the Debtor's bankruptcy estate. Moreover, the entry

of any sort of injunctive relief against the Key Employees would undoubtedly have an adverse effect on the Debtor's business operations, estate, and ability to reorganize.

27. Furthermore, defending the Debtor's interests in the Arbitration would be a significant burden on the Debtor's resources, and would distract the Debtors' personnel from participating in the reorganization process, causing the Debtor and its creditors immediate and irreparable harm. Additionally, if the Arbitration proceeds post-petition, any indemnification claims by the Key Employees against the Debtor could arguably be treated as administrative expense claims.

28. By extending the automatic stay to the Key Employees with respect to the Arbitration, the Court will provide the Debtor with the "breathing spell" contemplated by section 362 and the opportunity to minimize administrative expenses that could frustrate their efforts to maximize the value of the estate. Extending the automatic stay to cover the Arbitration is in the best interests of the Debtor, its creditors, and other parties in interest in this chapter 11 case.

### III. **CONCLUSION**

For the reasons set forth above, the Debtor respectfully requests entry of an order:

1. Extending the automatic stay provided by 11 U.S.C. § 362(a) to the Arbitration; and
2. For such other and further relief as the Court deems just.

DATED: December 27, 2018          LEIB M. LERNER
                                  **ALSTON & BIRD LLP**


                                  /s/ Leib M. Lerner
                                  Leib M. Lerner
                                  Proposed attorneys for Debtor, XTAL Inc.