1 Leib M. Lerner (CA State Bar No. 227323)
2 Anthony L. Greene (CA State Bar No. 302044)
  Alina A. Ananian (CA State Bar No. 322905)
3 **ALSTON & BIRD LLP**
  333 S. Hope Street, 16th Floor
4 Los Angeles, CA 90071
  Telephone: (213) 576-1000
5 Facsimile: (213) 576-1100
  Email: leib.lerner@alston.com
6 Email: anthony.greene@alston.com
7 Email: alina.ananian@alston.com

8 Attorneys for Debtor XTAL Inc.

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>XTAL Inc.,<br><br>Debtor | Bankruptcy Case No.: 18-52770-MEH<br><br>Chapter 11<br><br>**DEBTOR'S REPLY IN SUPPORT OF SALE MOTION TO OBJECTIONS OF (I) ASML US, LLC AND (II) UNITED STATES TRUSTEE**<br><br><u>Hearing</u><br>Date: February 14, 2019<br>Time: 1:30 p.m.<br>Place: Courtroom 3020<br>      280 S 1st Street<br>      San Jose, CA 95113 |

XTAL Inc., the debtor and debtor-in-possession in the above-captioned case (the "Debtor"), hereby files this Reply in Support of Sale Motion to Objections of the United States Trustee (Doc. 102) and ASML US, LLC (Doc. 103). Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Debtor's Motion to Approve Sale Procedures for the Auction of Patents and Software Free and Clear of Liens, Claims and Interests and the Related Abandonment of Certain Property (the "Motion") (Doc. 77) ("Motion").

# I.
# RESPONSE TO ASML OBJECTION

1. The Debtor listed ASML US, Inc. with a claim that is contingent, unliquidated and disputed. ASML US, LLC asserts that it is the successor in interest to ASML US, Inc. (both entities together for purposes of this reply, "ASML"). Neither of those entities has filed a proof of claim in this case, and neither entity is entitled to any distribution out of the assets of the Debtor's estate. 11 U.S.C. §§ 501, 502. "An unsecured creditor or an equity security holder must file a proof of claim or interest for the claim to be allowed. . . ." FRBP 3002(a). "Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." FRBP 3003(c)(2). The fact that ASML is moving forward in state court has no bearing on the proposed Auction. *See, e.g., I.B.M. v. Fernstrom Storage and Van Co. (In re Fernstrom Storage and Van Co.)*, 938 F.2d 731 (7th Cir. 1991) (IBM was not required to file a proof of claim to proceed in civil suit against the debtor and could collect only from insurers instead of out of assets of the debtor's estate). ASML likely has at least one strategic reason for not filing a proof of claim. For example, by filing a proof of claim, it will submit itself to the jurisdiction of this Court, which it seems wary to do. Collier, ¶ 501.01[2][d].

2. ASML should not be permitted to derail this Bankruptcy Case for its own purposes without subjecting itself to the burdens that filing a proof of claim entail. Nor, as discussed above, does it qualify for an allowed claim that should be considered as permitting it to dictate sale procedures.

3. ASML misleadingly alleges that the briefing schedule in state court was "delayed" by

the Debtor. Rather, in spite of FRBP 4001(a)(3) and this Court's clear direction to the parties at the end of the January 24, 2018 remand and stay relief hearing, ASML's counsel went ahead and contacted Judge Kulkarni just four days after the order on stay relief was entered, proposing a briefing and hearing schedule that violated the automatic stay and would have required Debtor to respond to new papers by ASML on a legal holiday, with just 7 days' notice. *See* Lapping Declaration, **Exhibit B**. The Debtor simply proposed that (1) ASML should be required to comply with the law and file its papers no earlier than the first business day after the stay is lifted, and (2) Debtor should be provided 14 days to respond to ASML's proposed new papers. *See id.* Judge Kulkarni appropriately set the state court schedule in accordance with the Bankruptcy Code, the Bankruptcy Rules, and this Court's direction. *See also* Declaration of Leib M. Lerner concurrently filed (relevant portions of Bankruptcy Court Transcript, January 24, 2019), **Exhibit 3**.

4. One paragraph after accusing the Debtor of delay ASML asserts that the sale process should not even begin until after March 22. *See* ASML Objection, II.A. That makes no sense and is simply designed to chill bidding. The sale can proceed on a separate track. Potential buyers do not need to know the outcome of the March 22 hearing in order to perform their diligence now on what these legitimate buyers believe the Assets are worth and develop a bid in accordance with the protocol. Notably, ASML does not object to the protocol, the form NDA nor the due diligence sequence, except to try and push off the entire process. There is no telling what the superior court will rule, or how this Court will rule, regarding the sale of the Source Code following any ruling by Judge Kulkarni.

5. ASML anoints itself as "the only likely buyer" and asserts that "it will not allow itself to be outbid." ASML Objection, II.B. As this Court is well aware, it is impossible to predict today what ASML may or may not do in a fair and open sale as proposed by the Debtor. It is certainly inappropriate to accommodate a single party – which has not filed a proof of claim and has a highly disputed claim even if it did file one – at the expense of the Debtor, other creditors and parties in interest. A number of potential buyers have expressed an interest in purchasing the Assets, and need to have the assurance of a fair, open sale process with the opportunity for reasonable and timely diligence and a 363(m) good faith finding.

Case: 18-52770    Doc# 105    Filed: 02/12/19    Entered: 02/12/19 17:03:19    Page 3 of 7

3

DEBTOR'S REPLY IN SUPPORT OF SALE MOTION

6. Next, ASML wants (1) a free pass to be considered a Qualified Bidder and (2) to neither be required to pay any money to qualify nor to be the Winning Bidder. ASML Objection, II.C. As is plain from the Motion and the APA itself, the only material requirements necessary to become a Qualified Bidder is (1) to pay the 10% Overbid Deposit, and (2) to provide proof of financial ability to purchase the Assets. *See* Motion, Page 4; APA, § 5. ASML is not a secured creditor, and should not receive any type of hidden credit bid advantage over legitimate third party bidders. Nothing would chill bidding more than this Court entering an order letting all other potential buyers know that ASML can buy the Assets for free, with no money down.

7. ASML also attempts to chill bidding by arguing against a break-up fee for any party that is willing to create a stalking horse floor for the Auction, and even threatens "**any interested industry participant**" that it "**will assert claims against them**." *See* ASML Objection, II.D (emphasis supplied). This threat demonstrates the need for the sale procedures order to be entered, so that whether or not a party decides to take up the mantle of the Stalking Horse Bidder, all honest and good faith potential purchasers can have the comfort and assurance that they can move forward to evaluate the Assets for possible bid. Potential bidders such as Samsung Electronics Co., Ltd. should not be threatened with litigation by ASML in performing due diligence or submitting a bid. *See* Email attached as **Exhibit 4** to Lerner Declaration.

8. Finally, ASML tries to manipulate the Auction by asking that the Debtor be required to "consult with ASML rather than act unilaterally." ASML Objection, II.E. This is no different than ASML trying to control who the Debtor employs as counsel. *See* Letter attached as **Exhibit 5** to the Lerner Declaration. The Debtor is not inclined to provide ASML with material, non-public information that is not available to every other Qualified Bidder (if ASML qualifies as one pursuant to the required procedures). The Debtor proposes procedures that provide equal information and fair and open treatment to all bidders and concomitant disclosure to the Court. Any party may submit a written notice of intent to bid and has the opportunity to qualify as a Qualified Bidder, by paying the Overbid Deposit and providing written proof of financial ability to consummate the sale. Motion, ¶ 10.c and ¶ 10.d. Any party can become the Stalking Horse Bidder. *Id.* at ¶ 10.e. The identity of the Stalking Horse Bidder will be filed with the Court at least five business days before the Sale

Hearing. *Id*. The Debtor will notify all Qualified Bidders at or prior to the commencement of the Auction of the highest proposed price before overbids are submitted. *Id*. at ¶ 10.f. No telephonic appearances are permitted, other than any Stalking Horse Bidder. *Id*. at ¶ 10.K. This means that every bidder will be openly and notoriously disclosed. The procedures explicitly provide for open bidding, and "the true identify of each Qualified Bidder will be fully disclosed to the Court and all other Qualified Bidders and all material terms of each Qualified Bid will be fully disclosed to all other bidders throughout the entire Auction." *Id*. at ¶ 10.m.

## II.

## RESPONSE TO U.S. TRUSTEE'S OBJECTION TO SALE PROCEDURES MOTION

9. The U.S. Trustee objects to the break-up fee and 10% deposit proposed in the sale procedures. The Debtor respectfully requests that the Court overrule the objection so that the Debtor can move forward with marketing the Assets for sale. That is the only way to maximize value in this case. The U.S. Trustee is correct that there is no sale price. Unless this Court approves sale procedures for marketing the Assets, there won't be. Potential purchasers want to be able to examine the Patents and Source Code, and the Debtor, with the input of potential purchasers, has proposed a protocol that will enable parties to develop their offers on an expedited basis. The Debtor will require any bidder to then put down 10% as a deposit to be a Qualified Bidder for Auction. There is no bid reservation, and the Debtor believes that any party sophisticated enough to submit a bid will understand the bid deposit requirements.

10. The Debtor agrees that the proposed break-up fees in *American West* and *Calpine*, cited by the U.S. Trustee, were unreasonable. *See In re American West Airlines, Inc.*, 166 B.R. 908 (Bankr. D. Ariz. 1994) (denying $4 million break-up fee); *Calpine Corp. v. O'Brien Envt'l Energy, Inc.* (3rd Cir. 1999) (same). That is why Debtor here proposes a 5% break-up fee capped at $250,000. The Debtor expects that the Assets will generate bids somewhere in the mid-seven figure range. A 5% fee here is roughly commensurate with what any bidder might need to expend in legal fees and other costs to generate its bid, given the Debtor's dispute with ASML, the upcoming 1-day evidentiary hearing in state court that any potential buyer might want to observe or at least spend time to understand, the need for bidder counsel to review the APA, NDA and Patents, and the costs

5

DEBTOR'S REPLY IN SUPPORT OF SALE MOTION

to review the Source Code pursuant to the protocol. Capping the fee protects against bid chilling if the Auction generates more interest than expected, and presenting the break-up fee as a percentage encourages parties to increase their bids on the lower range of the scale without discounting their bid based upon their anticipated legal fees.

11. The overbid procedures balance the Debtor's interest in encouraging a Stalking Horse Bidder to come forward before the Auction to set a floor, while preserving the advantages to the Debtor of moving forward nonetheless if no Stalking Horse bidder emerges. After the Initial Overbid, all Qualified Bidders compete in very low and straightforward $25,000 minimum increments, thus encouraging parties to qualify to bid at a low 10% deposit of whatever their initial offer happens to be, and then knowing that they can compete with whichever bidder has the highest initial bid at the Auction.

12. As for the U.S. Trustee's specific objections to a sale, first, the Debtor has been entirely open about what it intends to do. It intends to sell the Assets, has filed the Motion to request procedures to do so, and has proposed a schedule to carry out the Auction. The Debtor believes that an oral motion at the Auction to confirm the sale, which is to be conducted in open court, should be appropriate, but if the Court desires, the Debtor proposes filing a formal sale motion three days prior to the Auction to comply with this formality.

13. Second, the proposed sale is for two very specific groups of assets, and not even close to a *sub rosa* plan. The Debtor proposes to sell the Patents and the Source Code. The Debtor has additional assets, such as its hardware, going concern value, net operating losses and litigation claims that it is not selling at this time or through these procedures.

14. Third, the Assets do not include any personally identifiable information, nor would a reading of the Motion present any doubt that the two asset groups (Patents and Source Code) could possibly include such information. The Debtor previously disclosed on January 7, 2019 to the Court, the U.S. Trustee and all parties in interest that it has no personally identifiable information (Doc. 36) (Item 67 of the Schedules) ("Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. 101(41A) and 107)? No."), and recalls that it reconfirmed this to the U.S. Trustee at the Initial Debtor's Exam, the 341(a) meeting, or both, which were concluded

same day requiring no supplementary questions. The Debtor again confirms that nothing has changed. The Debtor also points out that the U.S. Trustee is incorrect that Debtor did not file its 2015.3 Report. That Report was timely filed on January 8, 2019 (Doc. 44).

15. Fourth, the Debtor disagrees that any potential purchaser or party in interest could be confused about what is or is not being sold, or that the Motion is somehow deficient in any way in providing notice to any and all interested parties. The title of the Motion explicitly includes language regarding abandonment, so that any potential bidder will be clued into understanding that certain items that could be tied to the Assets will be destroyed in connection with any sale. The inclusion of this requirement in the Motion is not a reason to deny the sale procedures. To the contrary, any potential buyer of the Source Code needs to understand that only the latest version of xMO_Rel, and not any earlier versions, is being offered for sale. The Debtor also needed in its Motion to make this fact clear to the Court and to ASML. Those same potential buyers need to be assured that the Debtor will not retain any earlier versions of the Source Code, which would undermine the value of any sale. There are no secured creditors, and ASML, the only party that might assert an "interest" in the Source Code (which Debtor disputes absolutely), is actively engaged in the Bankruptcy Case and did not raise any objection to the protocol or the proposed destruction. However, if the Court believes that an additional motion should be filed to accomplish the proposed destruction on the back end of a sale, the Debtor will be happy to file such separate motion in advance of the Sale Hearing.

### III. CONCLUSION

16. For the reasons set forth above, the Debtor respectfully requests that the Court grant the Motion and such other and further relief as is just and proper.

DATED: February 12, 2019       LEIB M. LERNER
**ALSTON & BIRD LLP**

*/s/ Leib M. Lerner*
Leib M. Lerner
Attorneys for Debtor XTAL Inc.

Case: 18-52770    Doc# 105    Filed: 02/12/19    Entered: 02/12/19 17:03:19    Page 7 of 7
DEBTOR'S REPLY IN SUPPORT OF SALE MOTION