Leib M. Lerner (CA State Bar No. 227323)
Anthony L. Greene (CA State Bar No. 302044)
Alina A. Ananian (CA State Bar No. 322905)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: leib.lerner@alston.com
Email: anthony.greene@alston.com
Email: alina.ananian@alston.com

Attorneys for Debtor XTAL Inc.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>        XTAL Inc.,<br><br>                Debtor | Bankruptcy Case No.: 18-52770-MEH<br><br>Chapter 11<br><br>**CHAPTER 11 PLAN OF XTAL INC. DATED MARCH 28, 2019**<br><br><br>**<u>Plan Confirmation Hearing</u>:**<br>**Date:  May 2, 2019**<br>**Time:  10:30 a.m.**<br>**Place:  Courtroom 3020**<br>**        280 S 1st Street**<br>**        San Jose, CA 95113** |

# TABLE OF CONTENTS

Page

ARTICLE I SUMMARY ........................................................................................................1

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS ....................................1

2.01    Class 1. ....................................................................................................1

2.02    Class 2. ....................................................................................................1

2.03    Class 3. ....................................................................................................1

2.04    Class 4. ....................................................................................................1

2.05    Class 5. ....................................................................................................2

ARTICLE III TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,  U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS .......................................2

3.01    Unclassified Claims. .............................................................................2

3.02    Administrative Expense Claims. ...........................................................2

3.03    Priority Tax Claims. ..............................................................................2

3.04    United States Trustee Fees. ...................................................................3

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN.................3

4.01    Claims and interests shall be treated as follows under this Plan: ...............3

ARTICLE V ALLOWANCE AND DISALLOWANCE OF CLAIMS .................................6

5.01    Disputed Claim. .....................................................................................6

5.02    Distribution on a Disputed Claim. .........................................................6

5.03    Settlement of Disputed Claims. .............................................................6

ARTICLE VI PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...........................................................................................................6

6.01    Executory Contracts and Unexpired Leases. ........................................6

ARTICLE VII MEANS FOR IMPLEMENTATION OF THE PLAN ...........................................7

7.01    Effect of Distribution to Creditors. ......................................................7

7.02    Sources of Consideration for Plan Distributions. ................................7

7.03    Settlements and Contributions. .............................................................8

7.04    Issuance and Distribution of the Reorganized Debtor Equity Interests. ...................9

| | 7.05 | Section 1145 Exemption. | 10 |
|---|---|---|---|
| | 7.06 | Corporate Existence. | 10 |
| | 7.07 | Vesting of Assets in the Reorganized Debtor. | 10 |
| | 7.08 | Cancellation of Equity Securities and Related Obligations. | 11 |
| | 7.09 | Corporate Action. | 12 |
| | 7.10 | Certificate of Incorporation and Bylaws. | 12 |
| | 7.11 | Effectuating Documents, Further Transactions. | 12 |
| | 7.12 | Exemption from Certain Transfer Taxes and Recording Fees. | 13 |
| | 7.13 | Directors and Officers of the Reorganized Debtor | 13 |
| | 7.14 | Non-Compete Requirement for Reorganized Debtor | 14 |
| | 7.15 | Settlement with DFJY. | 14 |
| | 7.16 | Plan Supplement. | 14 |
| ARTICLE VIII | | GENERAL PROVISIONS | 14 |
| | 8.01 | Definitions and Rules of Construction. | 14 |
| | 8.02 | Effective Date of Plan. | 22 |
| | 8.03 | Severability. | 22 |
| | 8.04 | Binding Effect. | 22 |
| | 8.05 | Captions. | 22 |
| | 8.06 | Controlling Effect. | 22 |
| ARTICLE IX | | DISCHARGE | 22 |
| | 9.01. | Discharge. | 22 |
| ARTICLE X | | DISTRIBUTIONS AND DISPUTED CLAIMS | 22 |
| | 10.01 | Distributions. | 22 |
| | 10.02 | Date of Distributions. | 23 |
| | 10.03 | Postpetition Interest on Claims. | 23 |
| | 10.04 | Disbursing Agent | 23 |
| | 10.05 | Powers of Disbursing Agent. | 23 |
| | 10.06 | Delivery of Distributions. | 23 |

| | | |
|---|---|---|
| 10.07 | Setoffs. | 24 |
| 10.08 | Objections to Claims. | 24 |
| 10.09 | Payments and Distributions with Respect to Disputed Claims. | 24 |
| 10.10 | Estimation of Claims. | 25 |
| 10.11 | Distributions Relating to Disputed Claims. | 25 |
| 10.12 | Distributions after Allowance. | 25 |
| 10.13 | Preservation of Rights to Settle Claims. | 26 |
| 10.14 | Disallowed Claims. | 26 |
| 10.15 | De Minimus Claims. | 26 |
| ARTICLE XI | CONDITIONS PRECEDENT TO THE EFFECTIVE DATE | 26 |
| 11.01 | Conditions to Effective Date. | 26 |
| ARTICLE XII. | EFFECT OF CONFIRMATION | 27 |
| 12.01 | Compromise of Controversies. | 27 |
| 12.02 | Binding Effect. | 27 |
| 12.03 | Vesting of Assets. | 27 |
| 12.04 | Exculpation, Releases and Discharge. | 28 |
| 12.05 | Injunction. | 28 |
| 12.06 | Retention of Causes of Action/Reservation of Rights. | 29 |
| 12.07 | Causes of Action and Avoidance Actions. | 30 |
| 12.08 | Solicitation of this Plan. | 30 |
| 12.09 | Retention of Jurisdiction. | 30 |
| ARTICLE XIII. | MISCELLANEOUS PROVISIONS | 32 |
| 13.01 | Cramdown. | 32 |
| 13.02 | Amendments. | 32 |
| 13.03 | Effectuating Documents and Further Transactions. | 33 |
| 13.04 | Revocation or Withdrawal of this Plan. | 33 |
| 13.05 | Severability. | 33 |
| 13.06 | Time. | 34 |

13.07  Binding Effect. ..................................................................................34

13.08  Notices..........................................................................................34

Case: 18-52770    Doc# 138    Filed: 03/28/19    Entered: 03/28/19 14:55:03    Page 5 of
40

TABLE OF CONTENTS

# ARTICLE I

## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of XTAL Inc. (the "Debtor") from its cash on hand and salable assets as described herein. This Plan provides for 4 classes of claims and 1 class of equity security holders. Unsecured creditors holding Allowed Claims will receive distributions on a pro rata basis, except that unsecured creditor ASML shall receive as a component of its pro rata distribution on its allowed claim a partial distribution in kind in addition to cash. This Plan also provides for the payment of priority claims in full on the Effective Date of this Plan with respect to any such claim, and payment in full of all Administrative Expense Claims, except that Professionals appointed in the case shall be required to file a fee application and have their fees approved by the Court before their administrative claims are paid.

All creditors and equity security holders should refer to Articles II through VII of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

# ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    <u>Class 1</u>.   All Allowed Secured Claims secured by liens against property of the Estate under § 506 of the Code.

2.02    <u>Class 2</u>.   All Allowed Claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.03    <u>Class 3</u>.   The Allowed Unsecured Claim of ASML, subject to the terms of this Plan and the ASML Settlement Agreement.

2.04    <u>Class 4</u>.   All Allowed Unsecured Claims under § 502 of the Bankruptcy Code ("General Unsecured Claims") other than Claims included in Class 3.

2.05    Class 5.   All equity interests of the Debtor.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,

## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims.   Under section §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02    Administrative Expense Claims.

(a) Each holder of an Administrative Expense Claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Reorganized Debtor, or as ordered by the Bankruptcy Court.

(b) Notwithstanding anything in (a) above, Professionals appointed in the case shall be required to file a final fee application within 30 days of the Effective Date and have their fees and expenses approved by the Court before their Administrative Expense Claims are paid. All other holders of an Administrative Expense Claim must file a request for payment of their Administrative Expense Claim by no later than 30 days after the Effective Date, provided, however, that post-petition liabilities incurred in the ordinary course of business by Debtor may be paid in full by the Debtor or the Reorganized Debtor, as the case may be, in the ordinary course of business, provided further that the foregoing does not prohibit the challenge of any such liabilities and the requirement of creditors asserting such claims to file a request for payment of an Administrative Expense Claim with the Court.

(c) In connection with the ASML Settlement Agreement, ASML will not object to bankruptcy counsel for Debtor Alston & Bird LLP's fees and expenses, except that it may object as to any portion that exceeds $1,300,000.00.

3.03    Priority Tax Claims.  Each holder of an Allowed priority tax claim will be paid either in cash on the Effective Date of this Plan, or, at the election of the Reorganized Debtor and agreement of the holder of such Allowed priority tax claim, on such other terms of treatment

2

consistent with § 1129(a)(9)(C) of the Code, which alternate terms, if any, shall be set forth in any order approving confirmation of this Plan.

3.04    United States Trustee Fees.   All fees required to be paid by 28 U.S.C. §1930(a)(6) ("U.S. Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on or before the Effective Date.  Thereafter all U.S. Trustee Fees will be timely paid by the Reorganized Debtor.

## ARTICLE IV

### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and Interests shall be treated as follows under this Plan:

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 1 – Secured Claims | Impaired | Class 1 is impaired by this Plan and is entitled to vote.  Each holder of a Secured Claim is deemed to be in a separate sub-class with respect to its Secured Claim and the collateral with respect thereto.  Each holder of a Secured Claim shall retain the lien on its collateral and on the Effective Date, the Reorganized Debtor will either (i) assume any valid and allowed obligations owed to any Holder of an allowed Class 1 Claim or (ii) shall surrender the collateral subject to any valid first-priority liens (after giving effect to the Plan and any discharges thereunder) to the lien holder of the particular allowed Class 1 Claim. |
| Class 2 - Priority Claims | Unimpaired | Class 2 is unimpaired by this Plan, and |

| | | |
|---|---|---|
| | | deemed to accept the Plan. Each Holder of an Allowed Class 2 Priority Claim will be paid in full, in cash, upon the later of the Effective Date, or the date on which such claim, if disputed, is allowed by a Final Order. For avoidance of doubt, any employee that continues his or her employment with the Reorganized Debtor after Plan confirmation will retain all accrued paid time off and other benefits. |
| Class 3 – ASML Unsecured Claim | Impaired | Class 3 is impaired by this Plan and entitled to vote. Class 3 shall be treated as follows: If the ASML Settlement Agreement is approved by the Court and Class 3 accepts the Plan as provided for in the ASML Settlement Agreement, which shall be incorporated herein by reference as if set forth fully in its entirety, the Holder of the Allowed Class 3 Claim shall receive, on account of its Class 3 Claim and the terms and conditions set forth in this Plan, subject to the Class 3 Claim Distribution Limitation, (i) the IP Assets, (ii) a pro rata distribution of Cash, to be assigned to the Reorganized Debtor, after taking into account the distribution to Class 4 and the value of all |

| | | other consideration distributed to Class 3 in this Plan, (iii) the computer servers, laptops, and furniture; (iv) the Residual Cash, which shall not be less than the Minimum Residual Cash Distribution of $75,000; (v) the Malpractice Claims; (vi) the portion of the Net Avoidance Action Distributions, if any, to which Class 3 is entitled; and (vii) such other consideration as set forth in this Plan. The holder of the Class 3 Claim shall receive no distributions under this Plan on account of any Class 3 Claim except as set forth above and in the ASML Settlement Agreement. |
|---|---|---|
| Class 4 – General Unsecured Creditors | Impaired | Class 4 is impaired under this Plan and each holder of a Class 4 General Unsecured Claim is entitled to vote. Class 4 shall be treated as follows: (i) A pro rata portion of an aggregate cash payment of $50,000 shall be distributed to all holders of an Allowed Class 4 Claim on the Effective Date of this Plan or as soon thereafter as any disputed claim is Allowed by a Final Order; and (ii) A pro rata portion of the Net Avoidance Action Distributions, if any, to which Class 4 is entitled. |
| Class 5 – Equity Interests | Impaired | Class 5 is impaired under the Plan, is deemed |

| | | to reject the Plan, and is not entitled to vote. On the Effective Date, all Equity Interests of each Holder of a Class 5 Interest shall be cancelled. Holders of Class 5 Interests shall neither receive any distribution nor retain any Interests on account of their Class 5 Interest under this Plan. |
|---|---|---|

**ARTICLE V**

**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Disputed Claim.  A disputed Claim is a claim that has not been allowed or disallowed by an order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.  If no proof of claim has been filed by the Claims Bar Date, a disputed claim shall be forever discharged on the Effective Date.

5.02    Distribution on a Disputed Claim.   No distribution will be made on account of a disputed Claim unless such claim is allowed by an order as provided in this Plan.  5.03 Settlement of Disputed Claims.   The Debtor and the Reorganized Debtor shall have the power and authority to settle and compromise a disputed Claim.  If the settlement of such disputed Claim will result in an Allowed Claim or value paid to the holder of such Claim in an amount less than $50,000, then the Debtor and the Reorganized Debtor may settle such Claim without further court approval; in all other cases, settlement of a disputed Claim shall require court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**ARTICLE VI**

**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.01    Executory Contracts and Unexpired Leases.

(a)        Unless either (i) previously rejected pursuant to an order of the court, (ii)

specifically assumed pursuant to this Plan, or (iii) a motion to assume such executory contract or lease has been filed by the Debtor prior to the Effective Date of this Plan and remains pending, the Debtor rejects all of the executory contracts and/or unexpired leases to which the Debtor is a party, effective upon the Effective Date of this Plan.

(b)     A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed upon the earlier of (i) 30 days after the date of the entry of an order approving the rejection, or (ii) 30 days after the Effective Date of this Plan.

(c)     All insurance policies pursuant to which the Debtor has any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to this Plan and shall be assumed and shall continue in full force and effect on and after the Effective Date and shall revest in the Reorganized Debtor.

(d)     The ASML Settlement Agreement and any other settlement agreement approved by the court pursuant to FRBP 9019 shall be deemed and treated as executory contracts pursuant to this Plan and shall be assumed and shall continue in full force and effect on and after the Effective Date and shall revest in the Reorganized Debtor.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    <u>Effect of Distribution to Creditors</u>.   Except as specifically provided herein, all Plan distributions made to Creditors holding Allowed Claims in any Class are intended to be and shall be final.  Notwithstanding any other provision in this Plan, payments or plan distributions may be made by the Reorganized Debtor as Disbursing Agent to Holders of Allowed Claims without reserve for payment of the amount, if any, of Disputed Claims that are disallowed unless the Holder of such disallowed Claim obtains a timely stay pending appeal with respect to any portion of such Claim that has been disallowed.  Further, no funds may be recovered from any Holder of a Claim receiving such a Distribution or from anyone else in the event of reversal of any order disallowing a Claim.

7.02    <u>Sources of Consideration for Plan Distributions</u>.  Except as otherwise provided in this Plan or the Confirmation Order, all consideration necessary for the Reorganized Debtor to

make distributions pursuant to this Plan shall be obtained from the Assets and existing Cash balances of the Debtor, Net Avoidance Action Distributions, and from the reallocation of the cash distribution to ASML as set forth herein.

7.03    Settlements and Contributions.    In consideration, among other things, of the treatment afforded to the Class 3 Claim under this Plan, and solely to the extent necessary to make distributions required under this Plan, the following settlements and contributions shall be consummated in connection with this Plan:

(a) ASML Settlement.    The Debtor and ASML have entered into the ASML Settlement Agreement, which the parties shall have presented to the Court in the first instance pursuant to FRBP 9019 and which must be approved on or before the Effective Date, and which is incorporated into this Plan as though fully set forth herein in its entirety.  The ASML Claim shall be deemed allowed in the Plan as a general unsecured claim in the amount of $224,330,000.00, and not subject to subordination or reconsideration. On the Effective Date of this Plan, ASML shall receive treatment as the Class 3 creditor set forth in section 4.01 above.

(b) Data Sequestration and Destruction. The server hard drives containing the data held by Debtor that is identified as the SALT Code and the data held by Debtor that is identified as the Picatho Code shall be sequestered and held by Mr. Hale or other identified ASML third party consultants, who shall not be employees of ASML, to preserve such data and hardware for purposes of further investigation and/or litigation.  Likewise, any data or hardware that was previously sequestered during the pendency of the lawsuit styled *ASML US, Inc. v. XTAL, Inc.*, Case No. 16-cv-295051 ("Superior Court Lawsuit") shall continue to be sequestered in the same manner for the benefit of ASML.  The latter provision supersedes the provisions of the Protective Order in the Superior Court Lawsuit.  To that end, Debtor authorizes NCC Group to release to Mr. Hale or other identified ASML third party consultants for sequestration the data currently held in escrow by the NCC Group. The Debtor's laptops shall be provided to Mr. Hale or other identified ASML third party consultants for destruction of their hard drives and immediate return of the laptops to the Debtor or Reorganized Debtor.  All sequestration and destruction shall be at ASML's sole and absolute expense.  If no lawsuit or legal claim is filed by ASML against a third

party on or before 4 years after the Effective Date ("Sequestration Deadline"), than ASML shall be obligated to immediately cause all sequestered data and hard drives to be destroyed and for any sequestered hardware to be returned to the Reorganized Debtor or individual owner, if any. If a lawsuit or legal claim is filed on or before the Sequestration Deadline, then the data, hardware and/or hard drives that may be related to the relevant party may be preserved for the pendency of the lawsuit or any appeal thereof, and destroyed immediately upon conclusion of the lawsuit.

(c) The computer servers, laptops and furniture to be distributed to ASML shall be disclaimed by ASML and instead shall be delivered to the Reorganized Debtor, provided, however, that the Identified Hard Drives must first be sequestered as set forth in this section, and the laptop hard drives must first be destroyed.

(d) ASML and XTAL agree to execute the Assignment of Patents, attached as an exhibit to the ASML Settlement Agreement. The original executed versions of any assignments or licenses pursuant to the ASML Settlement Agreement and/or the Plan shall be delivered to counsel for XTAL to be held in trust pending confirmation of the Plan, at which time they will be distributed to the appropriate party or parties so as to become effective.

(e) The Minimum Residual Cash Distribution shall be paid to ASML on the Effective Date. Additional Residual Cash Distributions shall be made after the Final Residual Cash Calculation.

(f) Cash assigned to the Reorganized Debtor pursuant to this Plan and the treatment of the Class 3 claim shall be utilized by the Reorganized Debtor only for ordinary course expenses, including salary and wages to be paid at normal market rates, using pre-confirmation salary and wage levels for the Debtor's employees as a guideline. Under no circumstances shall any such Cash be distributed to any equity holder of the Reorganized Debtor as a distribution on equity (as opposed to regular salary or wages), nor shall any such Cash be utilized as a capital contribution to capitalize any other entity.

7.04    Issuance and Distribution of the Reorganized Debtor Equity Interests. ASML disclaims the Reorganized Debtor Equity Interests to which ASML would be otherwise entitled to receive on account of ASML's Class 3 Claim. Such Reorganized Debtor Equity Interests shall not

vest in ASML, by law or in equity.  Instead, on the Effective Date, the Reorganized Debtor shall issue the Reorganized Debtor Equity Interests to the Class 3 Claim Equity Designee.  The Reorganized Debtor Equity Interests, when issued or distributed as provided in this Plan, will be duly authorized, validly issued, and, if applicable, fully paid and non-assessable.  Each distribution and issuance shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribdution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.  The issuance of the Reorganized Debtor Equity Interests is specifically and materially tied to and conditioned upon the non-compete requirement for Reorganized Debtor included in this Plan.

7.05    Section 1145 Exemption.    Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any securities contemplated by this Plan and any and all settlement agreements incorporated therein, including the Reorganized Debtor equity interests, shall, to the fullest extent permitted by applicable law, be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of securities.  In addition, under section 1145 of the Bankruptcy Code any securities contemplated by this Plan, including the Reorganized Debtor Equity Interests will be freely tradable and transferable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (ii) the restrictions, if any, on the transferability of such securities and instruments set forth in any stockholders agreement; and (iii) applicable regulatory approval.

7.06    Corporate Existence.    Except as otherwise provided in this Plan, the Debtor shall be replaced entirely and only the Reorganized Debtor shall exist after the Effective Date.

7.07    Vesting of Assets in the Reorganized Debtor.    Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date,

all property of the Estate, including any net operating losses or other tax benefits or credits, all causes of action, and any property acquired by the Debtor pursuant to this Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or causes of action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

      7.08   <u>Cancellation of Equity Securities and Related Obligations</u>. On the Effective Date, except as otherwise specifically provided for in this Plan: (1) any certificate, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest (except such certificates, notes, other instruments or documents evidencing indebtedness or obligations of the Debtor that are reinstated pursuant to this Plan), shall be cancelled and the Reorganized Debtor shall not have any continuing obligations thereunder; and, (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Debtor's former equity interests and any other certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements or certificates, notes or other instruments evidencing indebtedness or obligations of the Debtor that are specifically reinstated or assumed by the Reorganized Debtor pursuant to this Plan) shall be released and discharged; provided, however, that notwithstanding Confirmation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under this Plan and governing the rights and obligations of non-Debtor parties to such agreements vis-à-vis each other; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or this Plan, or result in any expense or liability to the Reorganized Debtor.

7.09    <u>Corporate Action</u>.    Each of the matters provided for by this Plan involving the corporate structure of the Debtor or corporate or related actions to be taken by or required of the Reorganized Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided in this Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Interests, directors of the Debtor, or any other entity. Without limiting the foregoing, such actions may include (a) the adoption and filing of the Reorganized Debtor charter and the Reorganized Debtor bylaws and (b) the appointment of directors and officers for the Reorganized Debtor.

7.10    <u>Certificate of Incorporation and Bylaws</u>.    The certificates of incorporation and bylaws of the Debtor shall be amended, in form and substance acceptable to the Reorganized Debtor, as may be required to be consistent with the provisions of this Plan and the Bankruptcy Code. The certificate of incorporation of the Reorganized Debtor shall, among other things:  (1) authorize issuance of the Reorganized Debtor equity interests; and (2) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting equity securities. On or as soon as reasonably practicable after the Effective Date, to the extent required, the Reorganized Debtor shall file a new certificate of incorporation in form and substance acceptable to the Reorganized Debtor, with the secretary (or equivalent state officer or Entity) of the state of the United States under which the Reorganized Debtor is or is to be incorporated or organized. On or as soon as reasonably practicable after the Effective Date, to the extent required, the Reorganized Debtor shall file the Reorganized Debtor charter with the secretary (or equivalent state officer or Entity) of the state of the United States under which the Reorganized Debtor is to be incorporated or organized. After the Effective Date, the Reorganized Debtor may amend and restate its new certificate of incorporation and other constituent documents as permitted by the relevant state corporate law.

7.11    <u>Effectuating Documents, Further Transactions</u>.    On and after the Effective Date, the Reorganized Debtor, and the officers and members of the boards of directors (or other governing bodies) thereof, are authorized to and may issue, execute, deliver, file, or record such

contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan and the Securities issued pursuant to this Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to this Plan.

7.12 <u>Exemption from Certain Transfer Taxes and Recording Fees</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, the transfer from the Debtor to the Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

7.13 <u>Directors and Officers of the Reorganized Debtor</u>.   On the Effective Date, the board of directors of the Reorganized Debtor shall be composed of Jiangwei Li, who shall be Reorganized Debtor's sole officer and director.  For a period of 42 months after the Effective Date, ASML will have the right to appoint a Board Observer who will be permitted to attend and participate in all meetings of the board, to receive all information provided to members of the board, and to access all information to which members of the board have access.  Mr. Li's

compensation as of the Effective Date shall be the same as the annual compensation that he received in the twelve months prior to the bankruptcy filing.

7.14    Non-Compete Requirement for Reorganized Debtor.  The Reorganized Debtor shall be barred for a period of three years after the Effective Date from providing metrology, inspection, modelling, or computational lithography (including optical proximity correction) products or services specifically related to substrate patterning for the use in micro-electronics or integrated circuit devices ("ASML Field of Business").  For avoidance of doubt, nothing herein shall prevent Jiangwei Li or any other employee of Reorganized Debtor from leaving the employment of Reorganized Debtor and exercising their right to work for any other entity pursuant to federal and state law.

7.15    Settlement with DFJY.  Debtor may, but is not required, to enter into a settlement with DFJY, to be approved by the Court pursuant to FRBP 9019, that provides for the assignment of the PCT Patents to DFJY provided that XTAL obtains worldwide, non-exclusive, royalty-free, fully-paid-up, perpetual, irrevocable, sublicensable, assignable licenses to the PCT Patents and the associated US versions of said Patents at least for the ASML Field of Business to make, use, offer to sell, sell, export and import any product and perform any process or method the manufacture, use, offer for sale, sale, or importation, or performance and those licenses are transferred to ASML concurrent with assignment of the PCT Patents to DFJY.  ASML will not object to a settlement between XTAL and DFJY as set forth herein.

7.16    Plan Supplement.  To the extent not already filed with the Court, the forms of assignments, licenses and other documents referenced in this Article VII shall be filed in a Plan Supplement no later than seven days before the Confirmation Hearing.

**ARTICLE VIII**

**GENERAL PROVISIONS**

8.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

"Administrative Expense Claim" means a Claim for costs and expenses of the

administration of a Case under Section 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, a Claim of a Professional employed at the expense of the Estate and any fees or charges asserted against the Estate under 28 U.S.C. § 1930.

"Additional Residual Cash Distributions" means distributions of Residual Cash to ASML that shall be made after the Final Residual Cash Calculation.

"Allowed Administrative Expense Claim" means an Administrative Expense Claim allowed pursuant to Sections 503(b) or 507(a)(1) of the Bankruptcy Code or pursuant to 28 U.S.C. § 1930.

"Allowed Claim" means a Claim that is either (i) listed in the Schedules filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent, unliquidated or unknown as to amount and as to which no timely objection has been filed; or (ii) with respect to which a Proof of Claim has been filed within the time period fixed by the Bankruptcy Court, and as to which no objection was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court, or as to which any such objection has been determined. The amount of an Allowed Claim shall be as follows: (a) if the creditor did not file a Proof of Claim with the Bankruptcy Court on or before the Claims Bar Date, the amount of the creditor's Claim as listed in the Schedules as neither disputed, contingent, unliquidated or unknown; or (b) if the creditor filed a Proof of Claim with the Bankruptcy Court on or before the Bar Date, (1) the amount stated in such Proof of Claim if no objection to such Proof of Claim was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court, or (2) the amount thereof as fixed by a Final Order of the Bankruptcy Court if an objection to such Proof of Claim was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court. Any Claim for which a Proof of Claim is not filed by the applicable bar date and that is listed in the Schedules as disputed, unliquidated, contingent or unknown, or that is not allowed under the terms of the Plan, shall be zero, and no Distribution shall be made on account of such Claim. An Allowed Claim shall not include any unmatured or post-petition interest unless otherwise stated in the Plan.

"Allowed [Class Designation and/or Secured, Priority, or General Unsecured] Claim" means an Allowed Claim in the specified Class and/or of the specified type.

"ASML" means ASML US LLC, f/k/a ASML US, Inc.

"ASML Field of Business" means metrology, inspection, modelling, or computational lithography (including optical proximity correction) products or services specifically related to substrate patterning for the use in micro-electronics or integrated circuit devices.

"Avoidance Action" means causes of action arising under 11 U.S.C. §§510, 541, 542, 544, 545, 547, 548, 549, 550, 551, and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

"Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended, and the Local Bankruptcy Rules for use in the United States Bankruptcy Court for the Central District of California, as amended.

"Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Rule 9006(a) of the Bankruptcy Rules.

"Cash" means cash and cash equivalents including, but not limited to, checks or similar forms of payment or exchange.

"Claim" means (i) a right to payment from the Debtor, whether or not such right to payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and includes any claims based on, arising from, or connected with any work performed by the Debtor prior to the Petition Date, or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Objection Deadline" means the thirtieth (30th) day after the Effective Date or such greater period of limitation as may be fixed or extended as set forth in the Plan or by agreement between the Debtor or Reorganized Debtor and the creditor.

1    "Class" means the group of Claims or Interests classified in the Plan pursuant to Sections

2    1122 and 1123 of the Bankruptcy Code.

3    "Class 3 Claim Distribution Limitation" means the sum of $224,330,000.

4    "Class 3 Claim Equity Designee" means Jiangwei Li or his assignee(s).

5    "Confirmation Date" means the date on which the Bankruptcy Court enters the

6    Confirmation Order.

7    "Confirmation Order" means the order, as entered, of the Bankruptcy Court confirming the

8    Plan.

9    "Disputed Claim" means all or any part of a Claim that is the subject of a timely objection

10   or request for estimation which is filed on or before the Claims Objection Deadline, which

11   objection or request for estimation has not been withdrawn or determined by a Final Order.  In

12   addition, prior to the earlier of (a) the Claims Objection Deadline, and (b) such date as the

13   Bankruptcy Court allows the Claim, any Claim that is evidenced by a Proof of Claim shall be

14   deemed a Disputed Claim for purposes of calculating and making any Distributions under the Plan

15   if: (1) no Claim corresponding to the Proof of Claim is listed in the Schedules, (2) the Claim

16   corresponding to the Proof of Claim is listed in the Schedules as disputed, contingent, unliquidated

17   or unknown, (3) the amount of the Claim as specified in the Proof of Claim exceeds the amount of

18   any corresponding Claim listed in the Schedules as not disputed, not contingent, and liquidated,

19   but only to such extent, or (4) the priority or classification of the Claim as specified in the Proof of

20   Claim differs from the priority of any corresponding Claim listed in the Schedules.

21   "Distribution" means any distribution pursuant to the Plan to the holders of an Allowed

22   Claim.

23   "DFJY" means DongFang JingYuan Electron Limited and Zhongke Jingyuan Electron

24   Limited.

25   "Effective Date" means the day that is the first business day following the 14th day after

26   the entry of the Confirmation Order.  But if a stay of the Confirmation Order is in effect on that

27   date, the Effective Date will be the first business day after that date on which no stay of the

28   Confirmation Order is in effect, provided that the confirmation order has not been vacated.

"Entity" or "Entities" includes Person, estate, trust governmental unit, and United States Trustee.

"Estate" means the Debtor's bankruptcy estate created under Section 541 of the Bankruptcy Code in the Case.

"Estate Claims" means any and all claims and causes of action that constitute property of the Estate including, but not limited to, any Avoidance Actions, equitable subordination or debt recharacterization actions against creditors or principals of the Debtor, and any causes of action or claims for recovery of any amounts owing to the Debtor or the Estate.

"File", "Filed", or "Filing" means duly and properly filed with the Court and reflected on the Court's official docket.

"Final Order" means an order or judgment entered by the applicable court on its docket.

    i. That has not been reversed, rescinded, stayed, modified, or amended;

    ii. That is in full force and effect;

    iii. With respect to which the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; and

    iv. With respect to which any appeal, motion or petition for review, remand, rehearing, or reconsideration, or writ of certiorari that is filed has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, reconsideration, or a writ of certiorari was sought, and any remanded or further proceedings following such appeal, petition, or writ have been resolved by Final Order.

"Final Residual Cash Calculation" means the calculation of Residual Cash, after all administrative claims are resolved under the Plan, minus the Initial Residual Cash Distribution.

"General Unsecured Claim" means an unsecured Claim against the Debtor, however arising, not entitled to priority under Section 507(a) of the Bankruptcy Code.

"Holder" means an entity or person holding a Claim or Interest.

"Identified Hard Drives" means the server hard drives identified in the ASML Settlement Agreement that must be turned over to Mr. Hale or other third party for sequestration.

"Interest" or "Equity Interest" means any ownership interest in the Debtor, as provided by Section 101(16) of the Bankruptcy Code, including, without limitation, any common stock interest, preferred stock interest, stock option, warrant, partnership interest, or membership interest.

"IP Assets" means (i) the patents and applications identified on pages 12 and 13 of XTAL's Bankruptcy Schedules (the "Patents"); (ii) all versions of the xMO_rel source code, including but not limited to the entire GitHub source code repository for the xMO_rel source code; (iii) any documents and records in the Debtor's possession directly related to the Patents and/or xMO_rel, including any and all filings with the U.S. Patent and Trademark Office ("PTO"), office actions by the PTO, and any responses submitted by the Debtor to the PTO regarding the Patents; (iv) any background intellectual property rights that XTAL has, to the extent any exist, in SALT or Picatho (Picasso).

"Malpractice Claims" means claims for professional negligence against the Putterman Landry + Yu law firm, to be assigned by Debtor to ASML.

"Minimum Residual Cash Distribution" means $75,000, to be paid to ASML on the Effective Date.

"Net Avoidance Action Distributions" means the gross amount recovered in any avoidance action pursued by the Reorganized Debtor, minus the attorney's fees and costs incurred to pursue the avoidance actions.

"Net Avoidance Action Distribution Calculation" means, (i) until such time that ASML has recouped through Net Avoidance Action Distributions an amount equal to the sum of funds distributed initially to Reorganized XTAL as of the Effective Date of the Plan, ASML shall receive 80%, reorganized XTAL shall receive 19.95%, and general unsecured creditors other than ASML shall receive pro-rata distributions of .05% of the Net Avoidance Action Distributions; and (ii) after ASML has recouped an amount equal to the sum of funds distributed initially to Reorganized XTAL as of the Effective Date of the Plan, ASML shall receive 49.975%,

reorganized XTAL shall receive 49.975%, and the general unsecured creditors other than ASML shall receive pro-rata portions of .05% of the Net Avoidance Action Distributions.

"PCT Licenses" means the licenses to be given by DFJY to XTAL regarding the PCT Patents.

"PCT Patents" means the five international application patents that may be wholly assigned to DFJY.

"Permitted Interests" means and shall consist of any licenses that XTAL conveyed in the IP Assets, excluding any ASML intellectual property contained therein if any, to Samsung Electronics Co., Ltd. ("Samsung") under the January 1, 2016 Engineering Services Agreement between XTAL and Samsung, or to Dongfang Jingyuan Electron Limited ("DFJY") or Zhongke Jingyuan Electron Limited ("ZKEL") under the October 14, 2015 Research and Development Services Agreement and 2015 Amended and Restated Research and Development Services Agreement between XTAL and DFJY. To the extent XTAL identifies any additional agreements between XTAL and Samsung, DFJY or ZKEL that XTAL believes should be included as Permitted Interests, XTAL shall notify ASML of those agreements and, with ASML's consent, which shall not be unreasonably withheld, those agreements shall be included as Permitted Interests. Also included as a Permitted Interest are any rights assigned pursuant to that certain Assignment of Priority Right in China of patent number 15/441,003, dated February 20, 2018, between XTAL, Inc., on the one hand, and Shenzhen Jingyuan Information Technology Co., Ltd and DFJY, on the other hand.

"Person" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or other Entity.

"Petition Date" means December 17, 2019, which is the date on which the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code.

"Plan Proponent" means the Debtor.

"Priority Claim" means an Allowed Claim entitled to priority against an Estate under

1   Bankruptcy Code §§ 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7).

2       "Priority Tax Claim" means any Claim provided for by Section 507(a)(8) of the

3   Bankruptcy Code.

4       "Professional" means a person or entity employed pursuant to an Order in accordance with

5   Sections 327 or 1103 of the Bankruptcy Code.

6       "Professional Fee Claims" means Claims for fees of a person or entity employed pursuant

7   to an order entered in accordance with Sections 327 or 1103 of the Bankruptcy Code.

8       "Proof of Claim" means a written statement filed in a Case by a creditor in which the

9   creditor sets forth the amount of its Claim, in accordance with Rule 3001 of the Bankruptcy Rules.

10      "Pro Rata Share" means the ratio (expressed as a percentage) of (i) the amount of an

11  Allowed Unsecured Claim to (ii) the sum of the aggregate amounts of Allowed Unsecured Claims.

12      "Residual Cash" means any Cash in the Debtor's Debtor in Possession bank accounts as

13  of the close of the Business Day on the day prior to the Effective Date, minus (i) outstanding but

14  uncleared checks or other transfers, (ii) allowed administrative expenses including approved

15  Professional fees, and (iii) up to $1.2 million.  The calculation of Residual Cash shall be made

16  after all administrative expenses are either allowed or disallowed under the Plan, and any order

17  regarding such administrative expenses is a Final Order, provided, however, that ASML shall

18  receive the Minimum Residual Cash Distribution on the Effective Date.

19      "Schedules" means the Schedules of Assets and Liabilities and Statement of Financial

20  Affairs filed by the Debtor in the Case, as required by Section 521(1) of the Bankruptcy Code,

21  Rules 1007(a)(3) and (b)(l) of the Bankruptcy Rules, and Official Bankruptcy Form No. 6, as the

22  Schedules may be amended from time to time.

23      "Secured Claim" means a Claim that is secured by a valid, duly perfected, and unavoidable

24  lien against property in which the Estate has an interest or that is subject to setoff under

25  Bankruptcy Code § 553 and a Claim is a Secured Claim only to the extent of the value of the

26  Claim Holder's interest in the Estate's interest in such property or to the extent of the amount

27  subject to setoff, as applicable, as determined under Bankruptcy Code § 506(a).

28

8.02    Effective Date of Plan.  The Effective Date of this Plan is the first business day following the 14th day after the entry of the Confirmation Order.  But if a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.

8.03    Severability.    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect.    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.    Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**ARTICLE IX**

**DISCHARGE**

9.01.    Discharge.    On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code and as otherwise provided in this Plan, including in Section 11.05 hereof.

**ARTICLE X**

**DISTRIBUTIONS AND DISPUTED CLAIMS**

10.01    Distributions.    As of the close of business on the Effective Date, the Reorganized Debtor shall not be responsible for recognizing any further changes in the record holders of any of

the Claims or Equity Interests. The Debtor or the Reorganized Debtor shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after the Effective Date.

10.02   Date of Distributions.   Except as otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is practicable.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

10.03   Postpetition Interest on Claims.  No interest shall accrue on or after the Petition Date on any Claims.

10.04   Disbursing Agent.   All distributions hereunder shall be made by the Reorganized Debtor (or such other entity designated by the Reorganized Debtor), as Disbursing Agent, on or after the Effective Date, as otherwise provided herein.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that the Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be deducted from the amount payable to the holders of Class 4 Claims.

10.05   Powers of Disbursing Agent.   The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder, (ii) make all distributions contemplated hereby, and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan.

10.06   Delivery of Distributions.   Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made by the Disbursing Agent, who shall transmit such distribution to the applicable holders of Allowed Claims.  In the event that any distribution to any Holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such Holder, but no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time

such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date, after such date, all unclaimed property or interest in property shall revert to the Reorganized Debtor and the Claim of any other Holder to such property or interest in property shall be discharged and forever barred. Notwithstanding any other provision in this Plan, payments or plan distributions may be made by the Disbursing Agent to Holders of Allowed Claims without reserve for payment of the amount, if any, of Disputed Claims that are disallowed unless the Holder of such disallowed Claim obtains a timely stay pending appeal with respect to any portion of such Claim that has been disallowed. Further, no funds may be recovered from any Holder of a Claim receiving such a Distribution or from anyone else in the event of reversal of any Order disallowing a Claim.

10.07    Setoffs.  The Debtor and the Reorganized Debtor may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the Holder of such Claim but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim the Debtor or the Reorganized Debtor may have against the Holder of such Claim.

10.08    Objections to Claims.   On and after the Effective Date, the Reorganized Debtor shall be entitled to and have the sole right to file objections to all Claims.  Any objections to Claims shall be served and filed on or before the earlier of (i) the Claims Objection Deadline, and (ii) such date as may be fixed by the Bankruptcy Court.  The subject time deadlines may be extended by the Court upon *ex parte* application made by the Reorganized Debtor.

10.09    Payments and Distributions with Respect to Disputed Claims.    Notwithstanding any other provision hereof, if any portion of a claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such claim unless and until such Disputed Claim becomes an Allowed Claim, except as otherwise permitted under this Plan.

10.10 <u>Estimation of Claims</u>.   The Debtor and the Reorganized Debtor may at any time request that the Bankruptcy Court estimate any contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection and make distributions under this Plan with respect to other Allowed Claims in the same class after making an appropriate reserve based on the estimated amount of such Disputed or contingent Claim.  The Reorganized Debtor may pursue supplementary proceedings to object to the allowance of any Claim that may have been estimated.

10.11 <u>Distributions Relating to Disputed Claims</u>.   At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim, such holder's pro rata portion of the property distributable with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated pro rata to the holders of Allowed Claims in the same class.  Notwithstanding any other provision in this Plan, payments or plan distributions may be made by the Reorganized Debtor as Disbursing Agent to Holders of Allowed Claims without reserve for payment of the amount, if any, of Disputed Claims that are disallowed unless the Holder of such disallowed Claim obtains a timely stay pending appeal with respect to any portion of such Claim that has been disallowed.  Further, no funds may be recovered from any Holder of a Claim receiving such a Distribution or from anyone else in the event of reversal of any Order disallowing a Claim.

10.12 <u>Distributions after Allowance</u>.  To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a distribution shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan. Such distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any

Case: 18-52770   Doc# 138   Filed: 03/28/19   Entered: 03/28/19 14:55:03   Page 30 of 40

1  Disputed Claim is entered, as provided for in this Plan, and thereafter the Disbursing Agent shall

2  provide to the holder of such Claim, the distribution to which such holder is entitled hereunder.

3       10.13   Preservation of Rights to Settle Claims.  In accordance with section 1123(b) of the

4  Bankruptcy Code, the Reorganized Debtor shall retain and may enforce, sue on, settle, or

5  compromise (or decline to do any of the foregoing) all claims, rights, causes of action, Avoidance

6  Actions, suits, and proceedings, whether in law or in equity, whether known or unknown, that the

7  Debtor or its estate may hold against any person or entity without the approval of the Bankruptcy

8  Court, the Confirmation Order and any contract, instrument, release, indenture, or other agreement

9  entered into in connection herewith. The Reorganized Debtor or its successor(s) may pursue such

10 retained claims, rights, or causes of action, suits, or proceedings, as appropriate, in accordance

11 with the best interests of the Reorganized Debtor or its successor(s) who hold such rights.

12      10.14   Disallowed Claims.    All claims held by persons or entities against whom the

13 Debtor or the Reorganized Debtor has commenced a proceeding asserting a cause of action under

14 sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code (other than those

15 Claims, causes of action and/or right to recover any avoided or avoidable transfer have been

16 waived pursuant to this Plan) shall be deemed "disallowed" Claims pursuant to section 502(d) of

17 the Bankruptcy Code and shall continue to be disallowed for all purposes until the avoidance

18 action against such party has been settled or resolved by Final Order and any sums due to the

19 Debtor or the Reorganized Debtor from such party have been paid.

20      10.15   De Minimus Claims.   The Disbursing Agents shall not be required to disburse any

21 amount on a Claim that is $1.00 or less.

22 **ARTICLE XI**

23 **CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

24      11.01   Conditions to Effective Date.

25      (i)      The Confirmation Order, in form and substance satisfactory to the Debtor shall

26 have been entered and shall be in full force and effect and there shall not be a stay or injunction in

27 effect with respect thereto;

28

(ii)     All actions, documents, and agreements necessary to implement this Plan, including, without limitation, all actions, documents, and agreements necessary to implement this Plan shall have been effected or executed in form and substance acceptable to the Debtor and ASML;

(iii)     The Debtor shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and that are required by law, regulation, or order;

(iv)     The ASML Settlement Agreement shall have been approved by the Court.

## ARTICLE XII.

## EFFECT OF CONFIRMATION

12.01     <u>Compromise of Controversies</u>.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises and settlement provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlement are in the best interests of the Estate, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness.

12.02     <u>Binding Effect</u>.  Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

12.03     <u>Vesting of Assets</u>.  On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's Estate shall vest in the Reorganized Debtor free and clear of all Claims, liens, encumbrances, charges, and other interests.  The Reorganized

27

Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

12.04    Exculpation, Releases and Discharge.    As of the Effective Date, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and equity Interests of any nature whatsoever against the Debtor or its Estate, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and equity Interests.  On the Effective Date, the Debtor shall be deemed discharged and released under Section 1141(d)(l)(A) of the Bankruptcy Code from any and all Claims and equity Interests, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, and the equity Interests shall be terminated.  As of the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting against the Debtor or the Reorganized Debtor and their respective assets, property and/or Estate, any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and all equity Interests or other rights of a Holder of an equity Interest, relating to any of the Debtor or Reorganized Debtor or any of their respective assets, property and/or Estate, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and any equity Interest or other rights of a Holder of an equity Interest and termination of all rights of any Holder of an equity Interest in the Debtor pursuant to Sections 524 and 1141 of the Bankruptcy Code.

12.05    Injunction. As of the Effective Date all Persons who have held, hold or may hold Claims against or equity Interests in the Debtor, are permanently enjoined from taking any of the

following actions against the Reorganized Debtor or its property on account of such Claims or equity Interests: (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting any right of setoff, subrogation or recoupment of any kind and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Plan. By accepting Distributions pursuant to this Plan each Holder of an Allowed Claim shall be deemed to have specifically consented to the releases, exculpations, discharges and injunctions set forth in this Plan. However, as noted above, ASML is and shall be permitted to seek relief from the Bankruptcy Court for the purposes of enforcing compliance by Debtor, Reorganized Debtor, and/or its employees, with part or all of any Permanent Injunction agreed upon as part of the ASML Settlement Agreement and/or entered in the Superior Court Lawsuit.

12.06   Retention of Causes of Action/Reservation of Rights.

(a)   Nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtor or the Reorganized Debtor may have or which the Reorganized Debtor may choose to assert on behalf of its Estate under any provision of the Bankruptcy Code or any applicable non-bankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a cross-claim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, the Reorganized Debtor, their officers, directors, or representatives; and (ii) the turnover of any property of the Debtor's Estate.

(b)   Nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by this Plan. The Reorganized Debtor shall have, retain, reserve, and be

entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights respecting any Claim left unimpaired by this Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

12.07  <u>Causes of Action and Avoidance Actions.</u>  The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate any causes of action, including any Avoidance Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the above or any other provision in the Plan, neither the Debtor nor the Reorganized Debtor shall pursue any claims or causes of action against any person or entity that seek to pierce the corporate veil on behalf of the Debtor's estate.

12.08  <u>Solicitation of this Plan.</u>  As of and subject to the occurrence of the Confirmation Date: (i) the Debtor shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (ii) the Debtor, the Reorganized Debtor and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, Professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under this Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or the offer and issuance of any securities under this Plan.

12.09  <u>Retention of Jurisdiction.</u>  On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

(a) to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b) to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c) to ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

(d) to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e) to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f) to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g) to hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the disclosure statement for this Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h) to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(i) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing;

(j) to take any action and issue such orders as may be necessary to construe, enforce,

implement, execute, and consummate this Plan or to maintain the integrity of this Plan following consummation;

(k)     to hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code;

(l)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(o)     to enter a final decree closing the Debtor's chapter 11 case;

(p)     to recover all assets of the Debtor and property of the Debtor's Estate, wherever located; and

(q)     to hear and determine any rights, Claims, or causes of action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

13.01   <u>Cramdown</u>.  In the event that sufficient votes to confirm the Plan are not received, the Debtor hereby requests confirmation of the Plan pursuant to the provisions of section 1129(b) of the Bankruptcy Code with respect to any and all Classes.

13.02   <u>Amendments</u>.

(a)     <u>Plan Modifications</u>.  This Plan may be amended, modified, or supplemented by the Debtor or the Reorganized Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, and the Reorganized Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the

Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

(b) Other Amendments. Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court, so long as such adjustments or modifications do not adversely impact the distributions hereunder.

13.03 Effectuating Documents and Further Transactions. Each of the officers of the Reorganized Debtor is authorized, in accordance with his or her authority under the resolutions of the applicable board of directors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

13.04 Revocation or Withdrawal of this Plan. The Debtor reserves the right to revoke or withdraw this Plan prior to the Effective Date. If the Debtor takes such action, this Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed to be a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in further proceedings involving the Debtor.

13.05 Severability. If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.06   Time.   In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.07   Binding Effect.   This Plan shall be binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, the holders of Claims and equity Interests, and each of their respective successors and assigns.

13.08   Notices.  All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows: Alston & Bird LLP, Attention: Leib M. Lerner, 333 S. Hope Street, 16th Floor, Los Angeles, CA 90071.

*[Signatures on Following Page]*

1

2

3    DATED:  March 28, 2019          XTAL Inc.

4

5                                     By: _____
                                          Jiangwei Li
6                                         Chief Executive Officer and Responsible
                                          Individual
7

8    DATED:  March 28, 2019          ALSTON & BIRD LLP

9

10                                    By:  /s/ Leib M. Lerner
                                           Leib M. Lerner
11                                         Attorneys for XTAL Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28