Leib M. Lerner (CA State Bar No. 227323)
Anthony L. Greene (CA State Bar No. 302044)
Alina A. Ananian (CA State Bar No. 322905)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: leib.lerner@alston.com
Email: anthony.greene@alston.com
Email: alina.ananian@alston.com

Attorneys for Debtor XTAL Inc.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>    XTAL Inc.,<br><br>           Debtor | Bankruptcy Case No.: 18-52770-MEH<br><br>Chapter 11<br><br>**DEBTOR'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH DFJY PARTIES PURSUANT TO FED. R. BANKR. PROC. 9019**<br><br>Hearing<br>Date:    April 25, 2019<br>Time:   10:30 a.m.<br>Place:   Courtroom 3020<br>           280 S 1st Street<br>           San Jose, CA 95113 |

Debtor and debtor-in-possession XTAL Inc. (the "**Debtor**" or **"XTAL"**), hereby moves the Court for an order approving a settlement agreement between the Debtor, on the one hand, and Dongfang Jingyuan Electron Limited ("**DFJY**"), Shenzhen Jingyuan Information Technology Co. LTD. ("**DFJY Shenzhen**") and Zhongke Jingyuan Electron Limited ("**ZKEL**" and, together with DFJY and DFJY Shenzhen, the "**DFJY Parties**"), on the other hand, pursuant to Federal Rules of Bankruptcy Procedure 9019 (the "**Motion**"). A true and correct copy of the Settlement Agreement is attached as **Exhibit 1** to the Declaration of Jiangwei Li ("Li Declaration").

## BACKGROUND

### A. Commencement of Bankruptcy Case

The Debtor filed a voluntary Chapter 11 case in the United States Bankruptcy Court for the Northern District of California on December 17, 2018 (the "**Petition Date**"). The case was assigned to the Honorable M. Elaine Hammond, and bears case number 18-52770 (the "**Bankruptcy Case**"). No trustee has been appointed, and the Debtor remains a debtor-in-possession.

### B. Debtor's Subsidiary

XITU Technology (Shenzhen) Co., Ltd. ("**Subsidiary**") is Debtor's wholly owned subsidiary in China. Debtor is in the process of closing down the Subsidiary, and has terminated all of its employees. Debtor is informed that Subsidiary owes approximately $90,000 to various contractors ("**Subsidiary Debt**").

### C. The DFJY Agreements and Claims

Debtor and DFJY Parties are parties to certain agreements, including the Assignment of Priority Right in China of patent number 15/441,003, dated February 20, 2018, between Debtor, on the one hand, and DFJY Shenzhen and DFJY, on the other hand (the "**Written Agreements**"), as well as various other arrangements and agreements. Li Declaration, ¶4.

DFJY has a scheduled claim for $120,576.99 against Debtor in the Bankruptcy Case. DFJY Parties also assert that Debtor owes $559,631.68 to DFJY Parties on account of moneys advanced by DFJY Parties to Subsidiary for the Debtor's benefit, at a time that the Debtor was unable to transmit funds to Subsidiary under China law. In addition, DFJY Parties asserts that Subsidiary owes DFJY Parties an additional approximate $34,457.67 as a direct expense. Li Declaration, ¶5.

1      Debtor asserts that DFJY owes Debtor approximately $543,310 for pre-petition services provided by Debtor to DFJY. Li Declaration, ¶6.

### D. The PCT Patents

Debtor and DFJY share patent counsel. DFJY is jointly named together with the Debtor as the owner of five PCT patents that correspond to five U.S. patents that DFJY owns outright. DFJY maintains that Debtor was mistakenly added as a joint applicant in the PCT applications, and that those patents should have either been applied for solely in DFJY's name or transferred to DFJY. A list of the PCT patents is attached as Exhibit A (the "**PCT Patents**") to the Settlement Agreement. After the Petition Date, the Debtor investigated DFJY's assertions and agrees that DFJY should be the sole owner of the PCT Patents. Li Declaration, ¶7.

On March 28, 2019, Debtor filed its Plan of Reorganization ("**Plan**"). The Plan provides, among other matters, that the Written Agreements are included as Permitted Interests (defined in Section 8.01 of the Plan). Li Declaration, ¶8.

The Plan also provides in Section 7.15 thereof that the Debtor may, but is not required, to enter into a settlement with DFJY, to be approved by the Court pursuant to FRBP 9019, that provides for the assignment of the PCT Patents to DFJY provided that Debtor obtains worldwide, non-exclusive, royalty-free, fully-paid-up, perpetual, irrevocable, sublicensable, assignable licenses to the PCT Patents and the associated US versions of said Patents at least for the ASML Field of Business to make, use, offer to sell, sell, export and import any product and perform any process or method the manufacture, use, offer for sale, sale, or importation, or performance and those licenses are transferred to ASML concurrent with assignment of the PCT Patents to DFJY. The Plan further provides that ASML will not object to a settlement between XTAL and DFJY as set forth herein. "ASML Field of Business" is defined in Section 8.01 of the Plan as "metrology, inspection, modelling, or computational lithography (including optical proximity correction) products or services specifically related to substrate patterning for the use in micro-electronics or integrated circuit devices." ASML is defined in Section 8.01 of the Plan as "ASML" means ASML US LLC, f/k/a ASML US, Inc.," another creditor of the Debtor. Li Declaration, ¶9.

**E. The Settlement**

The key terms of the Settlement Agreement are as follows:

- From DFJY Parties to Debtor:
    i. $50,000 for Debtor to transfer the five PCT Patents to DFJY's sole ownership (the "PCT Payment").
    ii. Satisfaction of the Subsidiary Debt paid directly to creditors of the Subsidiary ("Subsidiary Payments").
    iii. The license required by Section 7.15 of the Plan.
    iv. A vote by DFJY deemed in favor of the Plan based upon its Allowed Class 4 Claim, subject only to the DFJY Reservation (defined below).
    v. Waiver of any distribution on DFJY's Allowed Class 4 Claim under the Plan.
    vi. The releases provided in the Settlement Agreement.

- From Debtor to DFJY Parties:
    i. Transfer of the PCT Patents so that DFJY becomes the sole owner.
    ii. An Allowed Class 4 Claim in the total amount of $260,576.99 [calculated to correspond to the $50,000 PCT Payment + $120,576.99 scheduled claim + ~$90,000 Subsidiary Payments].
    iii. The releases provided in this Agreement. For avoidance of doubt, the releases are intended to waive and release by Debtor, without limitation, any and all collection or avoidance actions against DFJY Parties, other than as provided in this Agreement.

Li Declaration, ¶10.

In addition, as set forth more fully in the Settlement Agreement, the license provided by DFJY to Debtor shall in turn be transferred by the Debtor to ASML in accordance with the requirements of the Plan and Debtor's separate settlement agreement with ASML. Li Declaration, ¶11.

## ARGUMENT

**A. The Bankruptcy Code Favors Settlement**

Compromises in bankruptcy may be implemented pursuant to a motion for approval. *See* Fed. R. Bankr. P. 9019. It is well established that bankruptcy courts favor compromises. *See In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990). "The purpose of a compromise

agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. denied*, *Martin v. Robinson*, 479 U.S. 854 (1986). This Court does not need to conduct an exhaustive investigation into the validity of the merits of the claims that the parties seek to compromise. *See United States v. Alaska Nat'l Bank (In re Walsh Const., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). Rather, this Court need only determine that the outcome of litigation concerning the claims the parties hold against each other is open to reasonable doubt. *See Walsh Const., Inc.*, 669 F.2d at 1328-29. Even if faced with objections, a bankruptcy court may still approve a settlement if it is in the best interests of the bankruptcy estate and creditors. *See A&C Prop.*, 784 F.2d at 1382.

When considering a motion to compromise, the Court should give substantial weight to the [debtor's] views as to the merits of the compromise and settlement. *See, e.g., Blair*, 538 F.2d at 851; *Vaughn v. Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 496. Moreover, a compromise should be approved if it falls above the "lowest point in the range of reasonableness." *Cofoss v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2nd Cir.), *cert. denied*, 464 U.S. 822 (1983), quoting *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972).

The Ninth Circuit Court of Appeals has recognized that bankruptcy courts have wide discretion in approving compromise agreements. *See A & C Prop.*, 784 F.2d at 1380-81. In approving a compromise, a bankruptcy court must find that the compromise is fair and equitable. *See id.* at 1381; *see also Allen v. Rainsdon (In re Allen)*, 656 Fed.Appx. 291, 292 (9th Cir. 2016) (concluding that a bankruptcy court may approve a settlement it deems "fair and equitable"). The Ninth Circuit has identified four factors that a bankruptcy court should consider in determining whether a proposed settlement agreement is fair and equitable:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in

the premises.

*Id.* (quoting *Lambert v. Flight Transp. Corp. (In re Flight Transp. Corp. Sec. Litig.)*, 730 F.2d 1128, 1135 (8th Cir. 1984), cert. denied, 469 U.S. 1207 (1985)); *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F. 2d 610, 620 (9th Cir. 1988).

**B. The Settlement Agreement is in the Debtor's and its Estate's Best Interest**

The Settlement Agreement is in the Debtor's, creditors' and Debtor's estate's best interests. It simplifies the claims that Debtor needs to address in its Bankruptcy Case with the DFJY Parties, provides a vote in favor of the Plan, increases the pro rata distribution available to Allowed Class 4 Claims under the Plan, provides $50,000 in cash to Debtor's estate, and arranges for the satisfaction of Subsidiary debt in China. Li Declaration, ¶12.

## CONCLUSION

For the reasons set forth above, the Debtor respectfully requests that the Court approve the Settlement Agreement pursuant to FRBP 9019.

DATED: April 4, 2019  **ALSTON & BIRD LLP**

By: /s/ *Leib M. Lerner*
Leib M. Lerner
Attorneys for Debtor XTAL Inc.