Leib M. Lerner (CA State Bar No. 227323)
Anthony L. Greene (CA State Bar No. 302044)
Alina A. Ananian (CA State Bar No. 322905)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: leib.lerner@alston.com
Email: anthony.greene@alston.com
Email: alina.ananian@alston.com


Attorneys for Debtor XTAL Inc.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>XTAL Inc.,<br><br>Debtor | Bankruptcy Case No.: 18-52770-MEH<br><br>Chapter 11<br><br>**DECLARATION OF JIANGWEI LI IN SUPPORT OF DEBTOR'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH DFJY PARTIES PURSUANT TO FED. R. BANKR. PROC. 9019**<br><br><u>Hearing</u><br>Date:   April 25, 2019<br>Time:   10:30 a.m.<br>Place:  Courtroom 3020<br>          280 S 1st Street<br>          San Jose, CA 95113 |

DECLARATION OF JIANGWEI LI

## DECLARATION OF JIANGWEI LI

I, Jiangwei Li, declare as follows:

1.     I am a director, and the CEO, Secretary, and CFO of XTAL Inc. (the "**Debtor**"). I am also the Debtor's Chief Technology Officer and Responsible Individual. I have personal knowledge of the facts set forth in this declaration, except for those matters stated on information and belief, which I believe to be true. If called as a witness, I could and would testify competently thereto. A true and correct copy of the Settlement Agreement is attached as **Exhibit 1** hereto.

2.     I make this declaration in support of the *Debtor's Motion to Approve Settlement Agreement with DFJY Parties Pursuant to Fed. R. Bankr. Proc. 9019* (the "**Motion**"). Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

3.     XITU Technology (Shenzhen) Co., Ltd. ("**Subsidiary**") is Debtor's wholly owned subsidiary in China. Debtor is in the process of closing down the Subsidiary, and has terminated all of its employees. Debtor is informed that Subsidiary owes approximately $90,000 to various contractors ("**Subsidiary Debt**").

4.     Debtor and DFJY Parties are parties to certain agreements, including the Assignment of Priority Right in China of patent number 15/441,003, dated February 20, 2018, between Debtor, on the one hand, and DFJY Shenzhen and DFJY, on the other hand (the "**Written Agreements**"), as well as various other arrangements and agreements.

5.     DFJY has a scheduled claim for $120,576.99 against Debtor in the Bankruptcy Case. DFJY Parties also assert that Debtor owes $559,631.68 to DFJY Parties on account of moneys advanced by DFJY Parties to Subsidiary for the Debtor's benefit, at a time that the Debtor was unable to transmit funds to Subsidiary under China law. In addition, DFJY Parties asserts that Subsidiary owes DFJY Parties an additional approximate $34,457.67 as a direct expense.

6.     Debtor asserts that DFJY owes Debtor approximately $543,310 for pre-petition services provided by Debtor to DFJY.

7.     Debtor and DFJY share patent counsel. DFJY is jointly named together with the Debtor as the owner of five PCT patents that correspond to five U.S. patents that DFJY owns outright. DFJY maintains that Debtor was mistakenly added as a joint applicant in the PCT

DECLARATION OF JIANGWEI LI

applications, and that those patents should have either been applied for solely in DFJY's name or transferred to DFJY. A list of the PCT patents is attached as Exhibit A (the "**PCT Patents**") to the Settlement Agreement. After the Petition Date, the Debtor investigated DFJY's assertions and agrees that DFJY should be the sole owner of the PCT Patents.

8.  On March 28, 2019, Debtor filed its Plan of Reorganization ("**Plan**"). The Plan provides, among other matters, that the Written Agreements are included as Permitted Interests (defined in Section 8.01 of the Plan).

9.  The Plan also provides in Section 7.15 thereof that the Debtor may, but is not required, to enter into a settlement with DFJY, to be approved by the Court pursuant to FRBP 9019, that provides for the assignment of the PCT Patents to DFJY provided that Debtor obtains worldwide, non-exclusive, royalty-free, fully-paid-up, perpetual, irrevocable, sublicensable, assignable licenses to the PCT Patents and the associated US versions of said Patents at least for the ASML Field of Business to make, use, offer to sell, sell, export and import any product and perform any process or method the manufacture, use, offer for sale, sale, or importation, or performance and those licenses are transferred to ASML concurrent with assignment of the PCT Patents to DFJY. The Plan further provides that ASML will not object to a settlement between XTAL and DFJY as set forth herein. "ASML Field of Business" is defined in Section 8.01 of the Plan as "metrology, inspection, modelling, or computational lithography (including optical proximity correction) products or services specifically related to substrate patterning for the use in micro-electronics or integrated circuit devices." ASML is defined in Section 8.01 of the Plan as "ASML" means ASML US LLC, f/k/a ASML US, Inc.," another creditor of the Debtor.

10. The key terms of the Settlement Agreement are as follows:

- From DFJY Parties to Debtor:
  - i. $50,000 for Debtor to transfer the five PCT Patents to DFJY's sole ownership (the "PCT Payment").

  - ii. Satisfaction of the Subsidiary Debt paid directly to creditors of the Subsidiary ("Subsidiary Payments").

  - iii. The license required by Section 7.15 of the Plan.

DECLARATION OF JIANGWEI LI

iv. A vote by DFJY deemed in favor of the Plan based upon its Allowed Class 4 Claim, subject only to the DFJY Reservation (defined below).

v. Waiver of any distribution on DFJY's Allowed Class 4 Claim under the Plan.

vi. The releases provided in the Settlement Agreement.

- From Debtor to DFJY Parties:
  i. Transfer of the PCT Patents so that DFJY becomes the sole owner.

  ii. An Allowed Class 4 Claim in the total amount of $260,576.99 [calculated to correspond to the $50,000 PCT Payment + $120,576.99 scheduled claim + ~$90,000 Subsidiary Payments].

  iii. The releases provided in this Agreement. For avoidance of doubt, the releases are intended to waive and release by Debtor, without limitation, any and all collection or avoidance actions against DFJY Parties, other than as provided in this Agreement.

11. In addition, as set forth more fully in the Settlement Agreement, the license provided by DFJY to Debtor shall in turn be transferred by the Debtor to ASML in accordance with the requirements of the Plan and Debtor's separate settlement agreement with ASML.

12. I believe Settlement Agreement is in the Debtor's, creditors' and Debtor's estate's best interests. It simplifies the claims that Debtor needs to address in its Bankruptcy Case with the DFJY Parties, provides a vote in favor of the Plan, increases the pro rata distribution available to Allowed Class 4 Claims under the Plan, provides $50,000 in cash to Debtor's estate, and arranges for the satisfaction of Subsidiary debt in China.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


DATED: April 4, 2019


_____
Jiangwei Li

DECLARATION OF JIANGWEI LI

# EXHIBIT 1

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of April 4, 2019, by and between XTAL, Inc. ("Debtor"), on the one hand, and Dongfang Jingyuan Electron Limited ("DFJY"), Shenzhen Jingyuan Information Technology Co. LTD. ("DFJY Shenzhen") and Zhongke Jingyuan Electron Limited ("ZKEL" and, together with DFJY and DFJY Shenzhen, the "DFJY Parties"), on the other hand, subject to approval by the Bankruptcy Court. This Agreement is entered into based upon the following:

## RECITALS

A. The Debtor is a Delaware corporation in a voluntary chapter 11 proceeding (the "Bankruptcy Case") commenced on December 17, 2018 (Case No.: 18-52770 - MEH) (the "Petition Date") before the United States Bankruptcy Court for the Northern District of California, San Jose Division (the "Bankruptcy Court").

B. XITU Technology (Shenzhen) Co., Ltd. ("Subsidiary") is Debtor's wholly owned subsidiary in China. Debtor is in the process of closing down the Subsidiary, and has terminated all of its employees. Debtor is informed that Subsidiary owes approximately $90,000 to various contractors ("Subsidiary Debt").

C. Debtor and DFJY Parties are parties to certain agreements, including the Assignment of Priority Right in China of patent number 15/441,003, dated February 20, 2018, between Debtor, on the one hand, and DFJY Shenzhen and DFJY, on the other hand (the "Written Agreements"), as well as various other arrangements and agreements.

D. DFJY has a scheduled claim for $120,576.99 against Debtor in the Bankruptcy Case. DFJY Parties also assert that Debtor owes $559,631.68 to DFJY Parties on account of moneys advanced by DFJY Parties to Subsidiary for the Debtor's benefit, at a time that the Debtor was unable to transmit funds to Subsidiary under China law. In addition, DFJY Parties asserts that Subsidiary owes DFJY Parties an additional approximate $34,457.67 as a direct expense.

E. Debtor asserts that DFJY owes Debtor approximately $543,310 for pre-petition services provided by Debtor to DFJY.

F. Debtor and DFJY share patent counsel. DFJY is jointly named together with the Debtor as the owner of five PCT patents that correspond to five U.S. patents that DFJY owns outright. DFJY maintains that Debtor was mistakenly added as a joint applicant in the PCT applications, and that those patents should have either been applied for solely in DFJY's name or transferred to DFJY. A list of the PCT patents is attached hereto as **Exhibit A** (the "PCT Patents"). After the Petition Date, the Debtor investigated DFJY's assertions and agrees that DFJY should be the sole owner of the PCT Patents.

G. On March 28, 2019, Debtor filed its Plan of Reorganization ("Plan").

H. The Plan provides, among other matters, that the Written Agreements are included as Permitted Interests (defined in Section 8.01 of the Plan).

I. The Plan also provides in Section 7.15 thereof that the Debtor may, but is not required, to enter into a settlement with DFJY, to be approved by the Court pursuant to FRBP 9019, that provides for the assignment of the PCT Patents to DFJY provided that Debtor obtains worldwide, non-exclusive, royalty-free, fully-paid-up, perpetual, irrevocable, sublicensable, assignable licenses to the PCT Patents and the associated US versions of said Patents at least for the ASML Field of Business to make, use, offer to sell, sell, export and import any product and perform any process or method the manufacture, use, offer for sale, sale, or importation, or performance and those licenses are transferred to ASML concurrent with assignment of the PCT Patents to DFJY. The Plan further provides that ASML will not object to a settlement between XTAL and DFJY as set forth herein. "ASML Field of Business" is defined in Section 8.01 of the Plan as "metrology, inspection, modelling, or computational lithography (including optical proximity correction) products or services specifically related to substrate patterning for the use in micro-electronics or integrated circuit devices." ASML is defined in Section 8.01 of the Plan as "ASML" means ASML US LLC, f/k/a ASML US, Inc.," another creditor of the Debtor.

J. In order to avoid the expense and uncertainty associated with litigating in the Bankruptcy Case or otherwise, the Parties have decided to resolve these matters as described herein.

NOW THEREFORE, based upon the foregoing recitals and upon the valuable consideration set forth herein, the receipt and sufficiency of which are acknowledged by the Parties, and subject to approval by the Bankruptcy Court, the Parties hereby agree as follows:

**AGREEMENT**

1. Bankruptcy Court Approval

This Agreement is conditioned upon and subject to entry of an order of the Bankruptcy Court approving the Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Order") and shall be effective upon the date the Order is entered (the "Effective Date"). If no Order is entered, this Agreement shall be null and void, and of no force or effect.

2. Consideration

   a. From DFJY Parties to Debtor:

      i. $50,000 for Debtor to transfer the five PCT Patents to DFJY's sole ownership (the "PCT Payment").

      ii. Satisfaction of the Subsidiary Debt paid directly to creditors of the Subsidiary ("Subsidiary Payments").

      iii. The license required by Section 7.15 of the Plan.

<ol type="i" start="4">
<li>A vote by DFJY deemed in favor of the Plan based upon its Allowed Class 4 Claim, subject only to the DFJY Reservation (defined below).</li>
<li>Waiver of any distribution on DFJY's Allowed Class 4 Claim under the Plan.</li>
<li>The releases provided in this Agreement.</li>
</ol>

b. From Debtor to DFJY Parties:

<ol type="i">
<li>Transfer of the PCT Patents so that DFJY becomes the sole owner.</li>
<li>An Allowed Class 4 Claim in the total amount of $260,576.99 [calculated to correspond to the $50,000 PCT Payment + $120,576.99 scheduled claim + ~$90,000 Subsidiary Payments].</li>
<li>The releases provided in this Agreement. For avoidance of doubt, the releases are intended to waive and release by Debtor, without limitation, any and all collection or avoidance actions against DFJY Parties, other than as provided in this Agreement.</li>
</ol>

3.  <u>Payment Deadline</u>

As a condition precedent to this Agreement, on or before May 1, 2019, DFJY Parties are required to (i) deposit a total of $50,000 in good funds into the trust account of Debtor's counsel Alston & Bird LLP to pay the PCT Payment required by this Agreement and (ii) make the Subsidiary Payments.

4.  <u>Debtor Assignment</u>

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Debtor hereby irrevocably conveys, transfers, and assigns to DFJY all of Debtor's right, title, and interest in and to the PCT Patents set forth on **Exhibit A**, in accordance with the Patent Assignment attached as **Exhibit B** hereto. For avoidance of doubt, Debtor shall be required to execute and deliver an original Patent Assignment to DFJY within 10 business days after the effective date of the Plan (as defined therein), and covenants to execute any and all such further documents as to effect the assignment, provided further that the Patent Assignment shall not be delivered to DFJY unless the XTAL License (defined below) is concurrently delivered by DFJY to Debtor.

5.  <u>XTAL License</u>

DFJY shall provide to Debtor obtain a worldwide, non-exclusive, royalty-free, fully-paid-up, perpetual, irrevocable, sublicensable, assignable licenses to the PCT Patents and the associated US versions of said Patents at least for the ASML Field of Business to make, use, offer to sell, sell, export and import any product and perform any process or method the manufacture, use, offer for sale, sale, or importation, or performance. The form of license is

3

attached as **Exhibit C** hereto ("XTAL License").  For avoidance of doubt, DFJY shall be required to execute and deliver an original XTAL License to Debtor within 10 business days after the effective date of the Plan (as defined therein), and covenants to execute any and all such further documents as to effect the assignment.  DFJY Parties acknowledge and agree that Debtor may, and intends to, transfer the XTAL License to ASML concurrent with assignment of the PCT Patents to DFJY.

6.      Releases

Except for the obligations and rights created by this Agreement, DFJY Parties and Debtor each release and forever discharge the other, and their parents, subsidiaries, divisions, predecessors, successors and assigns, and their directors, officers, employees, shareholders, agents, representatives, attorneys and accountants, from any and all claims, causes of actions, liabilities, debts, damages and costs, whatsoever known and unknown, foreseen and unforeseen, fixed or contingent, which exist or may exist between them as of the Effective Date of this Agreement.  Furthermore, DFJY and Debtor expressly waive all rights under Section 1542 of the California Civil Code, and under any similar laws, as to unknown claims they may hold against each other.  Section 1542 of the California Civil Code states:

*A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.*

DFJY and Debtor acknowledge that the foregoing releases are a key element of this Agreement.

**Notwithstanding the above, (i) the Debtor does not release Finest Sino International Limited ("Finest Sino"), or its indirect parent China Oriental Group Company Limited ("China Oriental"), from any claims that could be brought under Chapter 5 of the Bankruptcy Code; and (ii) DFJY Parties do not waive their right ("DFJY Reservation") to make a limited objection to any sequestration of data, under the Plan or otherwise, that DFJY Parties assert belongs to DFJY Parties or each of them.**

**Further, for avoidance of doubt, nothing in this Agreement shall be read to change or alter the rights of DFJY and DFJY Shenzhen pursuant to the Assignment of Priority Right in China of patent number 15/441,003, dated February 20, 2018.**

7.      Representations and Warranties

The parties hereto represent and warrant to each other as follows:

Each party hereto has received or has had the opportunity to receive independent legal advice from attorneys of that party's choice with respect to the advisability of executing this Agreement, and prior to the execution of this Agreement by each party, that party's attorney reviewed or had the opportunity to review this Agreement and discuss the Agreement with the party, and the party has made all desired changes.

Except as expressly stated in this Agreement, no party hereto has made any statement or representation to any other party hereto regarding the facts relied upon by said party in entering into this Agreement, and each party hereto specifically does not rely upon any statement, representation, or promise of any other party hereto in executing this Agreement, except as expressly stated in this Agreement.

Each party and its attorneys have made such investigation of the facts pertaining to this Agreement, and all of the matters appertaining thereto, as it deems necessary.

8.    No Assignment of Claims

The parties represent and warrant that the claims released herein have not been sold, transferred, or assigned to any person or entity, and that each has full authority to release such claims.

9.    Neutral Construction of the Agreement

This Agreement is a product of negotiation among the parties and represents the jointly conceived, bargained-for, and agreed-upon language mutually determined by the parties to express their intentions in entering into this Agreement. Any ambiguity or uncertainty in this Agreement shall be deemed to be caused by or attributable to the parties collectively. In any action to enforce or interpret this Agreement, the Agreement shall be construed in a neutral manner, and no term or provision of this Agreement, or the Agreement as a whole, shall be construed more or less favorably to any one party to this Agreement.

10.    Agreement Binding upon Successors

The terms and conditions of this Agreement shall be binding on the parties and their successors and assigns.

11.    Choice of Law

The validity, construction, and enforcement of this Agreement shall be governed by the laws of the State of California without regard to its choice of law principles.

12.    Jurisdiction and Venue

If legal action is initiated relative to the rights or obligations of the parties under this Agreement, the parties hereto agree and stipulate that such action must be initiated, maintained, and continued in the United States Bankruptcy Court, Northern District of California.  Notwithstanding the above, nothing herein shall constitute a general appearance by DFJY Parties, or each of them, in the Bankruptcy Case for any purpose or reason.

13.    Headings

The headings set forth herein are inserted for convenience of the parties only, and shall not be used to interpret, construe, or in any way affect the meaning of the terms and provisions of this Agreement.

14. <u>Attorneys' Fees</u>

In the event that any party employs attorneys to remedy, prevent, or obtain relief from a breach or default of this Agreement, or arising out of a breach or default of this Agreement, or in connection with asserting or contesting the validity of this Agreement, any of the terms, covenants, provisions, and all conditions hereof or of any of the matters referred to herein, and such party is the prevailing party in any action brought with respect thereto, such party shall be entitled to be reimbursed for all of its reasonable attorneys' fees, including, without limitation, those attorneys' fees incurred in each and every action, suit, or proceeding, including any and all appeals and petitions therefrom, and all costs and expenses incurred in connection therewith. Notwithstanding the above, and for avoidance of doubt, each party shall bear their own attorney fees, court costs, transfer costs, filing fees, assessments, and related expenses incurred by or on behalf of said party in connection with this Agreement, the Bankruptcy Case and the transfer or assignment of any assets or rights herein.

15. <u>Power of Representatives</u>

Any party executing this Agreement in a representative capacity is duly authorized and empowered to do so.

16. <u>Counterpart Signatures</u>

This Agreement may be signed in counterparts, each of which taken together shall constitute an original. Electronic transmission of a signature is valid as an original, except where otherwise required by this Agreement relating to any assignment, or as may be required by law or any government agency.

17. <u>Entire Agreement and Integration</u>

This Agreement, including the recitals herein, constitutes the entire agreement among the Parties pertaining to the subject matter hereof. Except as expressly provided in this Agreement, this Agreement is the final written expression and complete and exclusive statement of all the agreements, conditions, promises, and covenants among the parties with respect to the specific subject matter hereof, and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings, and discussions among the Parties and/or their respective counsel with respect to the subject matter covered hereby. Any amendment or modification of this Agreement, in order to be legally binding, must be in writing specifically referring to the Agreement, signed by duly authorized representatives of all Parties, and approved by the Court.

18. <u>Notices</u>

Notices shall be sent as follows:

<u>If to the Debtor:</u>

Jiangwei Li
XTAL Inc.

97 E. Brokaw Rd.
San Jose, CA 95112
jiangwei.li@xtalinc.com

With a copy to:

Leib Lerner, Esq.
Alston & Bird LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
leib.lerner@alston.com

<u>To DFJY Parties:</u>

Zongqiang Yu
Building 12, 156, #4, Jinghai Rd.
Beijing Economics Development District
Beijing, China. 100176
zongchang.yu@dfjy-jx.com

With a copy to:

Changan Law Firm
Attn: Mr. Dong
9/10 F Zhongjian Building
18 Xibahe Dongli, Chaoyang District
Beijing, China 100028
dongshuguang@changanlaw.com

Any party may change its address and/or fax number for purposes of this paragraph upon delivery to the other Parties of a written notice of a change of address.

19.     <u>Further Assurances</u>

Each party shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments, and documents as the other party may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement.

*[signatures on following page]*

Case: 18-52770     Doc# 148-1     Filed: 04/04/19     Entered: 04/04/19 23:54:14     Page 12 of 25

IN WITNESS WHEREOF, the parties hereto execute this Agreement as of the date first set forth above.

| XTAL, Inc.<br><br>By:_____<br>NAME: Jiangwei Li<br>TITLE: CEO | DONGFANG JINGYUAN ELECTRON LTD<br><br>By:_____<br>NAME: Weijie Shi<br>TITLE: VP |
|---|---|
| SHENZHEN JINGYUAN INFORMATION TECHNOLOGY CO. LTD (SHENZHEN)<br><br>By:_____<br>NAME: Weijie Shi<br>TITLE: CEO | ZHONGKE JINGYUAN ELECTRON LIMITED<br><br>By:_____<br>NAME: Zongqiang Yu<br>TITLE: CEO |

8

IN WITNESS WHEREOF, the parties hereto execute this Agreement as of the date first set forth above.

| XTAL, Inc. | DONGFANG JINGYUAN ELECTRON LTD |
|---|---|
| By:_____<br>NAME: Jiangwei Li<br>TITLE: CEO | By: _Weijie Shi_____<br>NAME: Weijie Shi<br>TITLE: VP |
| SHENZHEN JINGYUAN INFORMATION TECHNOLOGY CO. LTD (SHENZHEN)<br><br>By:_Weijie Shi_____<br>NAME: Weijie Shi<br>TITLE: CEO | ZHONGKE JINGYUAN ELECTRON LIMITED<br>_Zongchangq_<br>By:_____<br>NAME: Zongqiang Yu<br>TITLE: CEO |

8

# EXHIBIT A

## Exhibit A

Patent Utility Application
PCT Application Number: PCT/US2017/059024
U.S. Priority Application #: 15/419,624
Title: Guided Defect Detection of Integrated Circuits
Filed: 2017-10-30

Patent Utility Application
PCT Application Number: PCT/US2017/059027
U.S. Priority Application #: 15/419,643
Title: Method and System for Defect Prediction of Integrated Circuits
Filed: 2017-10-30

Patent Utility Application
PCT Application Number: PCT/US2017/059032
U.S. Priority Application #: 15/419,650
Title: Care Area Generation for Inspecting Integrated Circuits
Filed: 2017-10-30

Patent Utility Application
PCT Application Number: PCT/US2017/067001
U.S. Priority Application #: 15/419,657
Title: Method and System for Identifying Defects of Integrated Circuits
Filed: 2017-12-18

Patent Utility Application
PCT Application Number: PCT/US2017/059031
U.S. Priority Application #: 15/419,664
Title: Dynamic Updates for the Inspection of Integrated Circuits
Filed: 2017-10-30

# EXHIBIT B

# PATENT ASSIGNMENT

This Patent Assignment ("Patent Assignment"), dated as of April 4, 2019, is made by debtor and debtor-in-possession XTAL Inc., a Delaware corporation having its address of record at 97 E. Brokaw Road, Suite 330, San Jose, California 95112 ("Assignor"), in favor of Dongfang Jingyuan Electron Limited, ("DFJY") ("Assignee").

WHEREAS, Assignor has conveyed, transferred, and assigned to Assignee, among other assets, certain intellectual property of Assignor, pursuant to a settlement agreement between the Parties dated April 4, 2019, ("Settlement Agreement") and has agreed to cause the execution and delivery of this Patent Assignment by Assignor, for recording with the United States Patent and Trademark Office and corresponding entities or agencies in any applicable jurisdictions.

WHEREAS, "Plan" means a chapter 11 bankruptcy plan approved in XTAL's bankruptcy case pending in the U.S. Bankruptcy Court for the Northern District of California, San Jose Division, Case No. 18-52770.

NOW THEREFORE, Assignor agrees as follows:

1.     Assignment. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby irrevocably conveys, grants, transfers, and assigns to Assignee all of Assignor's right, title, and interest of every kind and character throughout the world in and to the following:

     (a)     the patents and patent applications set forth on Schedule 1 hereto ("Assigned Patents") and to the full extent of its ownership or interest therein, including, without limitation, all domestic and foreign patent applications and registrations thereof (and all patents that issue therefrom and all divisions, continuations, continuations-in-part, reexaminations, substitutions, reissues, extensions and renewals of such applications, registrations and patents, and the right to apply for any of the foregoing, and all pending and abandoned patent applications to which any of the Assigned Patents claim priority);

     (b)     all inventions, invention disclosures, and discoveries described in the Assigned Patents to the extent that such inventions, invention disclosures and discoveries could be claimed in any of the Patents;

     (c)     all patents that are related to any of the Assigned Patents through terminal disclaimer,

     (d)     any and all royalties, fees, income, payments, and other proceeds now or hereafter due or payable on the Assigned Patents or foregoing related rights;

     (e)     all rights to causes of action and remedies related to the Assigned Patents and with respect to the foregoing related rights (including, without limitation, the right to sue for past, present or future infringement, misappropriation or violation of rights related to the foregoing and to retain any damages and profits due or accrued); and

     (f)     any and all other rights and interests arising out of, in connection with or in relation to the Assigned Patents or foregoing related rights, including all rights of any kind whatsoever of Assignor accruing under any of the foregoing provided by applicable law of any jurisdiction, by international treaties and conventions, and otherwise throughout the world.

2.     Recordation and Further Actions. Assignor hereby authorizes the Commissioner for Patents in the United States Patent and Trademark Office and the officials of corresponding entities

1

or agencies in any applicable jurisdictions to record and register this Patent Assignment upon request by Assignee. Following the date hereof, upon Assignee's reasonable request, and at Assignee's sole cost and expense, Assignor shall take such steps arid actions, and provide such cooperation and assistance to Assignee and its successors, assigns, and legal representatives, including the execution and delivery of any affidavits, declarations, oaths, exhibits, assignments, powers of attorney, or other documents, as may be necessary to effect, evidence, or perfect the assignment of the Assigned Patents to Assignee, or any assignee or successor thereto.

      3.     Counterparts. This Patent Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same agreement. A signed copy of this Patent Assignment delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Patent Assignment.

      4.     Successors and Assigns. This Patent Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

      5.     Governing Law. This Patent Assignment and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based upon, arising out of, or relating to this Patent Assignment and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the United States and the State of California, without giving effect to any choice or conflict of law provision or rule thereof.

      6.     Effective Date. This Agreement shall be effective only upon (i) the approval of the Settlement Agreement by the Bankruptcy Court and (ii) the effective date of the Plan as defined therein. This Agreement shall be null and void if the Settlement Agreement is not approved by the Bankruptcy Court or the effective date of the Plan does not occur.

      IN WITNESS WHEREOF, Assignor and Assignee have duly executed this Patent Assignment.

DATED: April 4, 2019           **XTAL Inc.**

          By: _____
                Jiangwei Li

          CEO of Assignor XTAL Inc.

          **DongFang JingYuan Electron Limited**

DATED: April 4, 2019           By: _____*Weijie Shi*_____
                Weijie Shi

          VP of Assignee Dongfang Jingyuan Electron Limited

Patent Utility Application
PCT Application Number: PCT/US2017/059024
U.S. Priority Application #:  15/419,624
Title: Guided Defect Detection of Integrated Circuits
Filed: 2017-10-30

Patent Utility Application
PCT Application Number: PCT/US2017/059027
U.S. Priority Application #:  15/419,643
Title: Method and System for Defect Prediction of Integrated Circuits
Filed: 2017-10-30

Patent Utility Application
PCT Application Number: PCT/US2017/059032
U.S. Priority Application #:  15/419,650
Title: Care Area Generation for Inspecting Integrated Circuits
Filed: 2017-10-30

Patent Utility Application
PCT Application Number: PCT/US2017/067001
U.S. Priority Application #:  15/419,657
Title: Method and System for Identifying Defects of Integrated Circuits
Filed: 2017-12-18

Patent Utility Application
PCT Application Number: PCT/US2017/059031
U.S. Priority Application #:  15/419,664
Title: Dynamic Updates for the Inspection of Integrated Circuits
Filed: 2017-10-30

3

# EXHIBIT  C

<h1 style="text-align:center">Transferable Patent License Agreement</h1>

This Transferable Patent License Agreement ("License Agreement"), dated as of April 4, 2019, is made by Dongfang Jingyuan Electron Limited, ("DFJY") ("Licensor"), on the one hand, and debtor and debtor-in-possession XTAL Inc., a Delaware corporation having its address of record at 97 E. Brokaw Road, Suite 330, San Jose, California 95112 ("XTAL") ("Licensee"), on the other hand.

WHEREAS, XTAL is transferring certain patent assets to DFJY pursuant to a settlement agreement between the Parties dated April 4, 2019, ("Settlement Agreement");

WHEREAS, as called for the Settlement Agreement, the parties desire to have DFJY license related patent assets back to XTAL with the license being transferable to ASML US, LLC;

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Definitions**

1.1. An "Affiliate" of a Party means any other entity that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Party, and "control" (including as used in the terms "controlled by" and "under common control with") means the ownership, beneficially or of record, of fifty percent (50%) or more of the voting securities of an entity.

1.2. Licensed Patents. The "Licensed Patents" means the PCT patents set forth on Schedule A hereto and the associated U.S. versions of said patents.

1.3. ASML Field of Business. "ASML Field of Business" means metrology, inspection, modelling, or computational lithography (including optical proximity correction) products or services specifically related to substrate patterning for the use in micro-electronics or integrated circuit devices.

1.4. Plan. "Plan" means a chapter 11 bankruptcy plan approved in XTAL's bankruptcy case pending in the U.S. Bankruptcy Court for the Northern District of California, San Jose Division, Case No. 18-52770.

2. **License**.

2.1. License Grant. Subject to the terms and conditions of this License Agreement, Licensor hereby grants to Licensee a worldwide, non-exclusive, royalty-free, fully-paid-up, perpetual, irrevocable, sublicensable (in accordance with Section 2.2), assignable license under the Licensed Patents for the ASML Field of Business to make, use, offer to sell, sell, export and import any product and perform any process or method the manufacture, use, offer for sale, sale, or importation, or performance of which by Licensor or its Affiliates

1

Case: 18-52770    Doc# 148-1    Filed: 04/04/19    Entered: 04/04/19 23:54:14    Page 22 of 25

would, but for this Agreement, infringe a valid claim of a Licensed Patent in a jurisdiction where such a valid claim exists ("Licensed Products").

2.2. <u>Sublicense</u>. Licensee shall have the limited right to grant sublicenses of any of their license rights under this Agreement to any customers of Licensee who purchase Licensed Products, provided, however, that any Licensee's customers shall not also have the right to further sublicense except with respect to Licensee's Licensed Products.

2.3. <u>Assignment</u>. This License Agreement and rights hereunder shall be freely assignable by Licensee to third party ASML US, LLC.

3. **General Provisions**.

3.1. <u>Amendments</u>. No amendment to this Agreement will be effective unless it is in writing and signed by both Parties.

3.2. <u>Successors and Assigns</u>. This Agreement is binding upon and inures to the benefit of the Parties and each of their respective successors and permitted assigns.

3.3. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement.

3.4. <u>Severability</u>. If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability will not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

3.5. <u>Governing Law</u>. This Agreement, including all exhibits, schedules, attachments, and appendices attached to this Agreement and thereto are governed by, and construed in accordance with, the laws of the State of California, without regard to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of California.

3.6. <u>Entire Agreement</u>. This Agreement, including and together with any related exhibits, schedules, attachments and appendices, constitutes the sole and entire agreement of the parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, regarding such subject matter.

3.7. <u>Effective Date</u>. This Agreement shall be effective only upon (i) the approval of the Settlement Agreement by the Bankruptcy Court and (ii) the effective date of the Plan as defined therein. This Agreement shall be null and void if the Settlement Agreement is not approved by the Bankruptcy Court or the effective date of the Plan does not occur.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective officers thereunto duly authorized.

Case: 18-52770    Doc# 148-1    Filed: 04/04/19    Entered: 04/04/19 23:54:14    Page 23 of 25

DATED:  April 4, 2019

**Dongfang Jingyuan Electron Limited**

By: _____

Weijie Shi

VP of Licensor Dongfang Jingyuan Electron Limited


DATED:  April 4, 2019

**XTAL Inc.**

By: _____

Jiangwei Li

CEO of Licensee XTAL Inc.

3

**<u>Schedule A</u>**

**Licensed Patents**


Patent Utility Application
PCT Application Number: PCT/US2017/059024
U.S. Priority Application #:  15/419,624
Title: Guided Defect Detection of Integrated Circuits
Filed: 2017-10-30

Patent Utility Application
PCT Application Number: PCT/US2017/059027
U.S. Priority Application #:  15/419,643
Title: Method and System for Defect Prediction of Integrated Circuits
Filed: 2017-10-30

Patent Utility Application
PCT Application Number: PCT/US2017/059032
U.S. Priority Application #:  15/419,650
Title: Care Area Generation for Inspecting Integrated Circuits
Filed: 2017-10-30

Patent Utility Application
PCT Application Number: PCT/US2017/067001
U.S. Priority Application #:  15/419,657
Title: Method and System for Identifying Defects of Integrated Circuits
Filed: 2017-12-18

Patent Utility Application
PCT Application Number: PCT/US2017/059031
U.S. Priority Application #:  15/419,664
Title: Dynamic Updates for the Inspection of Integrated Circuits
Filed: 2017-10-30