TIMOTHY S. LAFFREDI (WI SBN 1055133)
Assistant United States Trustee
MARTA E. VILLACORTA (NY SBN 4918280)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
450 Golden Gate Avenue, Suite 05-0153
San Francisco, CA  94102
Telephone: (415) 252-2062
Facsimile:  (415) 705-3379
Email: Marta.Villacorta@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 18-52770 MEH |
| XTAL Inc., | Chapter 11 |
| Debtor. | Date:  April 18, 2019 |
| | Time:  10:30 a.m. |
| | Place:  280 South First Street |
| | Courtroom 3020 |
| | San Jose, CA 95113 |
| | Judge: Honorable M. Elaine Hammond |

**OBJECTION OF THE UNITED STATES TRUSTEE AND RESERVATION OF RIGHTS WITH RESPECT TO DEBTOR'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH ASML US, LLC**

Tracy Hope Davis, United States Trustee for Region 17 ("United States Trustee"), files this objection ("Objection") to the Motion to Approve Settlement Agreement with ASML US, LLC pursuant to Fed. R. Bankr. Pro. 9019, ECF No. 136 ("9019 Motion") filed by the above-captioned debtor, XTAL Inc. ("Debtor" or "XTAL"), and states as follows:

## I.    INTRODUCTION

The Court should deny approval of the 919 Motion for the following reasons.  First, the Debtor has not provided sufficient information to enable the Court and parties-in-interest to determine if the Settlement Agreement satisfies Rule 9019.  Second, the Settlement Agreement includes problematic provisions – such as third-party releases – that violate applicable law. Third, the distribution of assets as set forth in the Settlement Agreement appears to violate the

priority scheme. Finally, the Settlement Agreement's *sub rosa* elements dictate the terms of the Debtor's plan of reorganization and is thus, improper and impermissible at this time.

## II.  STATEMENT OF FACTS

1.  On December 17, 2018, the Debtor commenced the captioned case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ECF No. 1.

2.  The Section 341 meeting of creditors was held and concluded on January 15, 2019. *See* PACER docket for Case No. 18-52770 MEH. No official committee of unsecured creditors has been appointed due to lack of interest. *Id.*

3.  The Debtor specializes in yield enhancement and optimization software with hardware acceleration targeting the semiconductor ecosystem. ECF No. 11, Li Declaration, ¶ 4. The Debtor's principal office is located in San Jose, California.

### Debtor's Assets and Liabilities

4.  On January 7, 2019, the Debtor filed its Schedules and Statement of Financial Affairs ("SOFA").[1] *See* ECF Nos. 36-37. The Debtor scheduled assets total $4,865,899.23, including $3,095,189.02 in checking/money market accounts, $235,283.29 in deposits/prepayments, $680,208.67 in accounts receivable, $107,896.25 in office furniture, fixtures, and equipment, and $747,322.00 in net operating losses. ECF No. 36. The Debtor valued its intellectual property and other intangibles at "unknown." *Id.* at 7, 12-13. The Debtor also scheduled its liabilities at $846,230,357.98 consisting of $192,713.54 in priority unsecured claims and $846,037,644.44 in nonpriority unsecured claims. *Id.* According to Schedule E/F, the Debtor's main unsecured creditor is ASML US, Inc. ("ASML") holding a general unsecured claim in the amount of $845,114,000.00. *Id.* at 25.

5.  On its SOFA, the Debtor claims an ownership interest in XITU Technology (Shenzhen) Co., Ltd. a subsidiary located in Shenzhen, China. *See* ECF No. 37 at 10.

6.  The deadline to file a proof of claim in this case is April 15, 2019. *See* ECF No. 6.

*//*

---

[1] On December 28, 2018, the Debtor filed an "Ex-Parte Application for Extension of Time to File Schedules and Statement of Financial Affairs," ECF No. 29, which was subsequently approved by the Court, ECF No. 31. The deadline for Debtor to file its Schedules, SOFA and Equity List was extended from December 31, 2018 to January 7, 2019. ECF No. 31.

## Summary of 9019 Motion

7.      On May 11, 2016, ASML filed suit against the Debtor in Santa Clara Superior Court, Case No. 16-CV-295051 (the "State Court Action"). ECF No. 136. On the same day, ASML initiated an arbitration proceeding against two Debtor employees, Huayu Liu and Song Lan, before the American Arbitration Association styled *ASML US, Inc. v. Hua-yu Liu and Song Lan,* AAA Ref. No. 01-16-001-7373 (the "Arbitration"). *Id.* The Debtor filed a cross-complaint in the State Court Action, and the respondents in the Arbitration filed counter-claims against ASML. *Id.*, Jiangwei Li Decl., ¶ 3.

8.      A verdict was issued on November 28, 2018, with the jury finding in favor of ASML on all of its causes of action (the "Jury Verdict"). ECF No. 136. On December 17, 2018, before a second phase of trial on punitive damages was set to occur, the Debtor filed its chapter 11 bankruptcy case. *Id.* In its bankruptcy schedules filed on January 7, 2019, the Debtor scheduled ASML with a contingent, unliquidated and disputed claim in the amount of $845,114,000. *Id.* ASML then sought relief from the automatic stay, and the Debtor removed the action to the Bankruptcy Court as adversary proceeding number 19-05002. *Id.*

9.      Thereafter, ASML obtained an order from the Bankruptcy Court remanding the State Court Action back to state court, and granting stay relief for the State Court Action to proceed to judgment, with any enforcement retained solely by the Bankruptcy Court. *Id.*, Jiangwei Li Decl., ¶ 4. After stay relief was granted, a Phase II evidentiary hearing was set for the state court to determine the amount of any judgment, including compensatory and punitive damages, and to rule on ASML's request for a permanent injunction. *Id.* ¶ 6.

10.     Additionally, during the pendency of the State Court Action, there were a series of appeals and cross-appeals filed in the California Court of Appeals, Appellate case number H044654 and case number H044779. ECF No. 136, Jiangwei Li Decl., ¶ 5.

11.     In its bankruptcy case, the Debtor has sought to sell its scheduled Patents and xMO_rel software ("Patents"); however, the Debtor believes there is a risk that the outcome of the Phase II hearing may impede the sale of those assets without further litigation in the Bankruptcy Case. ECF No. 136, Jiangwei Li Decl., ¶ 8.

12.     The Debtor states that while preparing for the Phase II hearing, the parties engaged in multiple in-person and telephonic settlement conferences, ultimately reaching the

Settlement Agreement, which includes resolution of the State Court Action, the appeals, the Arbitration, the disposition of the Debtor's Patents, various releases, and incorporates a draft plan of reorganization which will result in a small distribution to non-ASML unsecured creditors and a carve out by ASML from its entitlements to permit certain remaining employees to work for a non-competing reorganized debtor.  ECF No. 136.  A copy of the Settlement Agreement was attached as Exhibit 1 to the Declaration of Jiangwei Li.  *Id.*

13.     The Settlement Agreement states that ASML's claim will be classified as a general unsecured claim in the amount of $224,330,000.  ECF No. 136, Ex. 1.  It also contains several provisions that require further examination (see below).  *Id.*

a.  **Section 2: Releases**

**Section 2(a): Release by ASML**. In exchange for the promises contained in the Settlement Agreement and its riders, ASML, on behalf of itself and its principals, agents, employees, officers, directors, attorneys, predecessors and successors, subsidiaries and parents, assigns, and insurers, hereby waives, releases and forever discharges, and agrees to the fullest extent permitted by law that it will not in any manner institute, prosecute or pursue against XTAL, any successor to XTAL or reorganized entity under the Plan, XTAL's wholly owned subsidiary XITU Technology (Shen-zhen) Co. Ltd. a/k/a XTAL China, Jiangwei Li, Huayu Liu, Song Lan, Jie Lin, Jihui Huang, Jane Wu and Sabrina Wu, if such individuals execute the riders required by this Agreement, Samsung Venture Investment Corp., and Dr. Sung-hoon Yang, any claims that either were brought, or could have been brought in the State Court Action or Arbitration or relate to an event occurring up to and including the Effective Date of the Settlement Agreement. This release, as it applies to Jiangwei Li, Huayu Liu, Song Lan, Jie Lin, Jihui Huang, Jane Wu and Sabrina Wu, is subject to the execution of the riders to be executed pursuant to Section 2(c) below.

**Section 2(b): Release by XTAL**.  In exchange for the promises contained in the Settlement Agreement, XTAL, on behalf of itself, and all of its principals, agents, employees, officers, attorneys, predecessors and successors, subsidiaries and parents, assigns, and insurers hereby waives, releases and forever discharges, and agrees to the fullest extent permitted by law that it will not in any manner institute, prosecute or pursue, against ASML and all of its present, past or future principals, agents, publicists, employees, officers, directors, partners, shareholders, attorneys, predecessors and successors, subsidiaries and parents, investors, assigns, insurers, family members, and any affiliates of ASML any claims that either were brought or could have been brought in the State Court Action or Arbitration, or relate to an event occurring up to and including the

Effective Date of the Settlement Agreement. This release, as it applies to any release by Jiangwei Li, Huayu Liu, Song Lan, Jie Lin, Jihui Huang, Jane Wu and Sabrina Wu is subject to the execution of the riders to be executed pursuant to Section 2(c) below.

**Section 2(c): XTAL Employee Releases and Litigation Support**. ASML and each and every employee of XTAL as of the Effective Date other than Huayu Liu and Song Lan shall execute the Litigation Support Rider attached as Exhibit A to the Settlement Agreement. Additionally, ASML and XTAL employees Huayu Liu and Song Lan must execute the Litigation Support Rider and Agreement to Dismiss Arbitration attached as Exhibit B to the Settlement Agreement.

b.  **Section 7: Debtor's Plan of Reorganization**:

i.  **ASML Vote**: ASML shall vote for, and shall not object to, the reorganization plan ("Plan"), a draft which was attached as Exhibit H to the Declaration of Jiangwei Li.

ii.  **Residual Cash to ASML:** The Residual Cash to be distributed to ASML shall be not less than $75,000.

iii.  **Assets Transferred to ASML in Lieu of Partial Monetary Distribution**: The Plan shall provide that in lieu of a partial monetary distribution on its claim, ASML shall receive free and clear of all claims or interests on an "as is, where is basis," the Debtor's Patents, malpractice claims against the Debtor may have against Putterman Landry + Yu law firm, among other assets (collectively, "Assets"). Neither the 9019 Motion nor Settlement Agreement provide any information regarding the value of the Assets to be transferred to ASML.

iv.  **Payment to Non-ASML Creditors**: The Plan shall provide for a $50,000 distribution to holders of allowed non-priority general unsecured claims other than ASML, subject to adjustment in connection with valuation of assets being transferred to ASML or otherwise disposed of through the Plan to any party.

v.  **Avoidance Actions**: Any funds obtained through avoidance actions pursued under the Plan, whether through settlement or otherwise, shall be distributed as follows: Until such time that ASML has recouped through Net Avoidance Action Distributions (defined below) an amount equal to the sum of funds distributed initially to reorganized XTAL on the effective date of the Plan, ASML shall receive 80%, reorganized XTAL shall receive 19.95%, and general unsecured creditors other than ASML shall receive pro-rata distributions of .05% of the Net Avoidance Action Distributions. After ASML has recouped an amount equal to the

sum of funds distributed initially to reorganized XTAL on the effective date of the Plan, ASML shall receive 49.975%, reorganized XTAL shall receive 49.975%, and the general unsecured creditors other than ASML shall receive pro-rata portions of .05% of the Net Avoidance Action Distributions. "Net Avoidance Action Distributions" shall mean the gross amount recovered, minus the attorney's fees and costs incurred to pursue the avoidance actions. Neither the 9019 Motion nor the Settlement Agreement provide any information regarding the value of the avoidance actions.

ECF No. 136, Ex. 1.

14. After the filing of the 9019 Motion, the Debtor filed a Plan and Disclosure Statement, which is scheduled to be heard on May 2, 2019. ECF Nos. 138, 139. The Debtor's Plan heavily relies on the approval of the Settlement Agreement. *Id.*

## III. LEGAL ARGUMENT

**A. The Debtor Has Not Provided Sufficient Information to Enable the Court and Parties-in-Interest to Determine if the Settlement Agreement Satisfies Rule 9019.**

Bankruptcy Rule 9019(a) provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). In approving a settlement, the Court is directed to consider: (1) the probability of success in litigation of the dispute, (2) the difficulties to be encountered, if any, in the collection of an award, (3) the complexity, expense, inconvenience and delay of litigation, and (4) the interest of creditors in the case, giving deference to any reasonable views expressed. *See In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986). These four factors are often referred to as the "A&C factors." The party seeking approval of a settlement has the burden of persuasion. *Id.*

Here, the Debtor merely cites the A&C factors and states in <u>one-paragraph</u> that the Settlement Agreement is in the best interest of the Debtor's estate and creditors because it "resolves litigation, simplifies the claims that Debtor needs to address in its Plan, facilitates disposition of estate assets, guarantees a distribution to non-ASML unsecured creditors, and forms the basis of a Plan of reorganization supported by the largest creditor, ASML." ECF No. 136 and Declaration of Jiangwei Li at ¶ 11. Despite the foregoing, the 9019 Motion is deficient in several respects. Specifically, the Debtor has offered no evidence regarding the value of the Assets being transferred to ASML and/or avoidance actions. Similarly, the Debtor has not

provided any explanation regarding why ASML is receiving $75,000 (in addition to the Assets, etc.) while other non-ASML creditors are to receive $50,000 pursuant to the Plan. Nor has the Debtor provided any evidence that these negotiations were at arms' length or provided any details regarding the analysis of the settlement undertaken, especially given that the Settlement Agreement contains third-party non-debtor releases. Given these deficiencies, the 9019 Motion should not be approved.

**B. The Releases Contained in the Settlement Agreement Violate Applicable Law.**

By its terms, section 524(e) of the Bankruptcy Code provides, "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). On no fewer than three occasions, the Ninth Circuit has construed that statutory provision to bar approval of releases like those sought by Debtor in the Settlement Agreement. *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995) (stating, "This court has repeatedly held, without exception, that § 524(e) precludes bankruptcy courts from discharging the liabilities of nondebtors."); *In re American Hardwoods, Inc.*, 885 F.2d at 626 (stating, "Section 524(e), therefore, limits the court's equitable power under section 105 to order the discharge of the liabilities of nondebtors…."); *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir. 1985) ("[T]he bankruptcy court has no power to discharge the liabilities of a nondebtor pursuant to the consent of creditors as part of a reorganization plan."), *rejected on other grounds by Reves v. Ernst & Young*, 494 U.S. 56, 64 (1990).[2]

_____

[2] Even where some courts in the Ninth Circuit have approved third party non-debtor releases, they have held that creditors must voluntarily and knowingly consent to such release:

> Any third-party release in connection with a plan of reorganization,
> at a minimum, must be fully disclosed and purely voluntary on the
> part of the releasing parties and cannot unfairly discriminate against
> others. In the Ninth Circuit and other jurisdictions that
> prohibit compelled third-party releases, any third-party release
> associated with a plan of reorganization draws its vitality from its
> status as a voluntary contractual agreement between the releasing
> and the released parties, rather than by virtue of the court's order
> confirming the plan.

*Billington v. Winograd (In re Hotel Mt. Lassen, Inc.)*, 207 B.R. 935, 941 (Bankr. E.D. Cal. 1997) (internal citations omitted).

Case: 18-52770 Doc# 155 Filed: 04/11/19 Entered: 04/11/19 17:18:15 Page 7 of 10

In the Ninth Circuit's view, there is not any meaningful difference between a release of liability in favor of a non-debtor third party backed by a permanent injunction and a bankruptcy discharge of that same third party's liability. *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 212 (3d Cir. 2000) (describing the authorities issued by the Courts of Appeals for the Ninth and Tenth Circuits on the issue of non-debtor releases by stating, "These courts find a release and permanent injunction to be indistinguishable from a bankruptcy discharge."). In addition, the Ninth Circuit reads 11 U.S.C. § 524(e) to limit the Bankruptcy Court's authority to enter injunctions under the Bankruptcy Code's more general source of equitable power set forth in section 105(a) of the Bankruptcy Code. "Noting that section 105 does not authorize relief inconsistent with more specific law, we concluded *the specific provisions of section 524 displace the court's equitable powers under section 105 to order permanent relief [against a non-debtor] sought by [the debtor]*." *In re Lowenschuss*, 67 F.3d at 1402 (internal quotation marks omitted) (citation omitted) (emphasis added).

Here, the Debtor asks the Court to approve the third party releases pursuant to FRBP 9019, however, the Court's power to approve settlements comes from Section 105(a), which provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *See* 11 U.S.C. § 105(a); *see also In re A & C Properties*, 784 F.2d at 1380 n.4 (stating that under the then newly enacted Bankruptcy Code, courts could approve compromises under Section 105(a)). In the view of the Ninth Circuit, therefore, section 524(e) of the Bankruptcy Code occupies the field and displaces the more general provisions of Section 105. Against these background legal principles, the third party releases set forth in Section 2 of the Settlement Agreement do not pass muster under governing case law and 11 U.S.C. § 524(e). Accordingly, the 9019 Motion should not be approved.

## C. The Proposed Distribution to Unsecured Creditors Set Forth in the Settlement Agreement Appears to Violate the Priority Scheme.

The Bankruptcy Code sets forth a basic system of priority, which ordinarily determines the order in which the bankruptcy court will distribute assets of the estate. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017). Secured creditors are highest on the priority list, for they must receive the proceeds of the collateral that secures their debts. *Id.* Special classes of

creditors, such as those who hold certain claims for taxes or wages, come next in a listed order. *Id.* Then come low-priority creditors, including general unsecured creditors. *Id.*

The proposed settlement at issue here is a structured transaction whereby the Debtor will, among other things, transfers the Assets (value not provided) and pay ASML $75,000, while non-ASML creditors only receive $50,000 through the Debtor's Plan. This proposed distribution appears to be an improper attempt to skew the statutory priority scheme because one general unsecured creditor is being favored over another without any justification. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973. At least one post *Jevic* court has recognized that "[i]n light of the Supreme Court's recent ruling in *Jevic*, parties who seek approval of settlements that provide for a distribution in a manner contrary to the Code's priority scheme should be prepared to prove that the settlement is not only 'fair and equitable' … but also that any deviation from the priority scheme for a portion of the assets is justified because it serves a significant Code-related objective." *In re Fryar*, 570 B.R. 602, 610 (Bankr. E.D. Tenn. 2017). Thus, based on the foregoing and lack of analysis regarding this issue in the 9019 Motion, the Settlement Agreement should not be approved.

**D. The Settlement Agreement Constitutes a *Sub Rosa* Plan.**

The *sub rosa* doctrine applies to settlements and compromises sought pursuant to Bankruptcy Rule 9019. *See Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 354 (5th Cir. 1997). Further, a proposed settlement cannot be "approved as a 'creeping' or *de facto* plan if timely objection is made that [such] transaction, either in fact or in effect, encroaches on a right afforded creditors or equity holders in the chapter 11 plan process . . . . A transaction which would effect a lock-up of the terms of a plan will not be permitted." *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990); *see also Official Committee of Equity Security Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987) (no distributions to unsecured creditors are allowed under chapter 11 except pursuant to a plan); *In re Quality Beverage Co.*, 181 B.R. 887, 895 (Bankr. S.D. Tex. 1995) (rejecting a compromise as a *sub rosa* plan because the effect of the settlement would distribute all the assets of the estate, thus affecting and binding the non-settlors, without giving them their chapter 11 rights such as disclosure, claims allowance and voting safeguards).

Like any other major pre-confirmation transaction, a settlement can have significant ramifications upon creditors and their interests. *See Crowthers McCall Pattern,* 114 B.R. at 885.

Here, the Settlement Agreement appears to be a *sub rosa* plan because it seeks to: (i) dictate the terms of the Debtor's Plan (e.g., classification of claim, distribution to creditors); and (ii) preordain unfair discrimination among unsecured creditors. Such terms cannot be binding on a debtor outside the plan approval process provided for under the Bankruptcy Code. Additionally, the Debtor should not be permitted to bind creditors without the disclosure, claims allowance, and voting safeguards of plan confirmation in Chapter 11. Accordingly, the Court should not approve the Settlement Agreement.

**E. Reservation of Rights by the United States Trustee.**

The United States Trustee expressly reserves her rights to object to any amendments made to the 9019 Motion, or any other additional relief requested in any subsequently-filed motion.

**IV. CONCLUSION**

For the foregoing reasons, the United States Trustee requests that the Court enter an order denying the 9019 Motion, and granting such other relief as is just and appropriate under the circumstances.

Dated: April 11, 2019

TRACY HOPE DAVIS
United States Trustee, Region 17

/s/*Marta E. Villacorta*
Marta E. Villacorta
Trial Attorney