Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 421-2624
Fax (415) 398-2820
sfinestone@fhlawllp.com

Attorneys for Creditor
Putterman Landry + Yu LLP

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>XTAL INC<br><br>    Debtor. | Case No. 18-52770<br><br>Chapter 11<br><br>**OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**<br><br>**Date:** May 2, 2019<br>**Time:** 10:30 a.m.<br>**Place:** Courtroom 3020 |

Creditor Putterman Landry + Yu LLP, now known as Putterman + Yu LLP ("Law Firm"), the holder of an unsecured claim of approximately $526,000, objects to Debtor's Disclosure Statement ("Disc. Stmt.") and its Plan of Reorganization (the "Plan").

**SUMMARY OF ARGUMENT:**

The Plan is premised upon the approval and implementation of the settlement agreement (the "Settlement") between Debtor and ASML. For the reasons set forth in the oppositions filed by Law Firm and the Office of the U.S. Trustee, the Settlement should not be approved. Perhaps recognizing the infirmities of their Settlement, Debtor and ASML continued the hearing on approval of the Settlement to the hearing on the Plan. As the Plan, however, is

based upon the Settlement, if the Settlement is not approved, the Plan is a non-starter. Without an approved Settlement, there is no Plan.

In terms of the Plan and Disclosure Statement, Debtor has sought to rush through approval of the Disclosure Statement and the Plan simultaneously. As discussed below, there are many questions about the adequacy of disclosure and numerous reasons why the Plan should not be confirmed.

**THE PLAN:**

The Plan adopts the terms in the Settlement and includes the following provisions:

- Provides at least $75,000 to ASML;

- Provides $50,000 to be split among all unsecured creditors other than ASML. This creditor pool has claims of approximately $1,000,000, so they will be receiving approximately 5% of their claims;

- Cancels are shares in the Debtor

- Issues the shares in the Reorganized Debtor to a person identified as the Class 3 Claim Equity Designee [Class 3 being ASML] (Disc. Stmt at 8.4);

- Provides that the new equity shall not vest in ASML, but shall be disclaimed by ASML (8.4);

- Provides that Mr. Li is the Equity Designee and will hold and control the shares of the Reorganized Debtor and can amend the certificates of incorporation and bylaws as he sees fit (Plan at page 17);

- Provides cash to the Reorganized Debtor estimated to be between $800,000 - $1,200,000, which are discussed as having value to ASML (Disc. Stmt. At 8.4)

- Leaves Jiangwei Li as sole officer and director of the reorganized debtor (Disc. Stmt at 8.13), though Mr. Li can leave the Reorganized Debtor anytime he wants (8.14);

- Gives ASML and DFJY Debtor's intellectual property;

- Allows prosecution of avoidance actions (without any information of what they are) with most of the recovery going to ASML and Jiangwei Li;

- Finally, provides that Debtor shall receive a discharge upon confirmation even though it has no business and will have transferred away all of its intellectual property upon confirmation if not before.

The Plan is a sham and returns virtually nothing to the unsecured creditors. As the Plan seems to benefit Debtor's insiders, it calls into question the motivations behind it. Law Firm, which holds over half of the unsecured creditor claims in amount, opposes the Plan as will at least two other creditors.

**LEGAL ARGUMENT:**

As Law Firm assumes there will be further briefing on confirmation issues, and given the rushed attempt to confirm the Plan, this objection highlights the relevant legal issues.

The Disclosure Statement contains inadequate disclosure in at least the following respects:

- There is a method for splitting the recoveries on avoidance actions, but there is no disclosure about whether there are any such claims;
- There are no disclosures about what if any claims the Debtor may have in general;
- There is no discussion about Debtor's future business. In fact, there appears to be no future business, as it will have transferred away all of its intellectual property and sold or transferred almost all of its computers and equipment and moved out of all office space;
- The Plan provides for the transfer of an alleged malpractice claim against the Firm, but there is no discussion of the basis of the alleged claim and what if any value it has. Notably, the alleged claim is not included in the liquidation analysis;
- The liquidation analysis is lacking in information. As noted above, there is no information about potential avoidance actions. The analysis values the Debtor's intellectual property at $5 million but provides no explanation for doing so. The analysis includes $500,000 in legal fees for Chapter 7 trustee's counsel with no explanation as to why the fees would be that high. Includes priority claims of

$100,000 though the Disclosure Statement's discussion of priority claims (see page 12) asserts that there are no claims.

- Pursuant to the Settlement, ASML is given an allowed claim of $224,330,000 but there is no information upon which a creditor can determine if that amount is appropriate;
- Provides that all settlement agreements are executory contracts which will be assumed, but gives no explanation of why this is so or the purpose of so construing any post-petition settlement (Disc. Stmt at page 17);
- Provides that Debtor's counsel fees are $1.3 million (to which ASML agrees not to object), which seem incredibly high for a case that has moved relatively quickly and for a company that is not operating in Chapter 11;
- Notes that the cash given to the Reorganized Debtor cannot be used in a distribution to the equity holders of the Reorganized Debtor (apparently only Mr. Li), but given that Mr. Li will continue on at the same salary level as he had pre-petition, even though there does not appear to be a company to operate, what is the difference between the salary and any restriction on distributions to equity;
- Notes that the treatment of all claims under the Plan will be treated as a compromise of controversy under Bankruptcy Rule 9019. There is no discussion or explanation about the reason for including such a provision and no discussion about whether the Plan's treatment of creditors can meet the standards of a Rule 9019 motion;
- Fails to explain for basis for the Debtor to receive a discharge under Bankruptcy Code Section 1141(d).

Turning now to some of the Plan specifics, the Law Firm contends the following are improper:

1)   The Plan violates the absolute priority rule. As noted above, the cancellation of the shares is a sham, as Mr. Li will receive all the shares of the Reorganized Debtor. He will remain on as the sole director and officer. As such, in practical terms he is retaining his interest in the company. Debtor presents no legal basis for Mr. Li's retention of his interests and, given

1 | that creditors are not being paid in full and object to confirmation, he cannot retain any interest without violating the absolute priority rule.

2) The Reorganized Debtor will initially receive 19.95% of any recoveries from avoidance actions and, if certain milestones are achieved, will receive 49.975% of recoveries. Given that unsecured creditors are receiving approximately 5% of their claims, why would avoidance action recoveries go to the Reorganized Debtor. Given that the Reorganized Debtor appears to be no more than Mr. Li, this treatment of avoidance recoveries also appears to violate the absolute priority rule.

3) Debtor intends to cramdown the Plan if any class rejects the Plan. Given Law Firm's vote against the Plan, Class 4 will be rejecting the Plan. How does Debtor intend to meet the cramdown standards?

4) There is no basis for Debtor to receive a discharge. There is no ongoing business. Bankruptcy Code Section 1141(d)(3) provides that Debtor will not receive a discharge if the plan provides for the liquidation of all or substantially all of the assets, or if Debtor does not engage in business after confirmation. Law Firm contends that both of these exceptions to discharge apply. Either through the Plan or pre-confirmation settlements, Debtor will have liquidated its operations. It will not engage in business after confirmation in any meaningful or normally understood use of that phrase. As such, it is not entitled to a discharge.

5) The Plan provides at 12.07 that neither the Debtor nor the Reorganized Debtor shall pursue claims against any person or entity that seek to pierce the corporate veil on behalf of the Debtor's estate. There is no explanation of what this provision means or why it is being included in the Plan. (see also Disc. Stmt. at 13.7)

6) For the reasons set forth above, the Plan is not brought in good faith and cannot meet the requirement of Bankruptcy Code Section 1129(a)(3).

**CONCLUSION:**

The Plan and the Settlement appear to be a convoluted strategy to benefit ASML and Mr. Li to the detriment of Law Firm and other unsecured creditors. It is difficult to conclude that the Settlement and the Plan are the result of management exercising its fiduciary duties on

behalf of the creditors. Based on the above discussion, Law Firm urges this Court to deny approval of the Disclosure Statement or confirmation of the Plan.

Dated: April 18, 2019                                FINESTONE HAYES LLP


/s/ Stephen D. Finestone
Stephen D. Finestone
Attorneys for Putterman + Yu